## PEOPLE *v.* CASE.

1. CRIMINAL LAW—MINORS—AGE.

    A 19-year-old person is presumed to have the full legal capacity of an adult, and is subject to the same responsibility for his criminal acts.

2. SAME—MINORS—AGE—PLEA OF GUILTY TO MURDER.

    Claim of 19-year-old defendant, convicted of first-degree murder following a plea of guilty to an open charge of murder, that he did not have the legal capacity to plead guilty thereto *held*, without merit, where a sanity hearing resulted in a finding that defendant was able to assist his counsel at trial, since the common law presumes that everyone of 19 years of age has full legal capacity as an adult and subjects them to the same responsibility for their acts (CL 1948, § 750.316).

3. HOMICIDE—PLEA OF GUILTY—DETERMINATION OF DEGREE OF MURDER.

    It is the duty of the trial court, upon entry of a plea of guilty to a charge of murder, to examine the witnesses and determine the degree of the crime, and to render judgment accordingly (CL 1948, § 750.318).

4. SAME—PLEA OF GUILTY—DETERMINATION OF DEGREE OF MURDER—STATUTES.

    A proceeding to determine the degree of murder, after a plea of guilty, is not a trial, and when a defendant confesses his guilt upon an open charge of murder, he no longer has a constitutional right to have a jury determine his guilt or the degree thereof (CL 1948, § 750.318).

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 27.
[2] 21 Am Jur 2d, Criminal Law § 485 *et seq.*
[3] 21 Am Jur 2d, Criminal Law § 496.
[4, 5] 26 Am Jur, Homicide §§ 89, 97.
[6–9] 26 Am Jur, Homicide §§ 14, 38 *et seq.*

5. SAME—MURDER—PLEA OF GUILTY—DETERMINATION OF DEGREE OF MURDER—STATUTES.

The statute requiring that the trial judge proceed to hear the evidence and classify the degree of guilt following a plea of guilty to an open charge of murder is not unconstitutional (CL 1948, § 750.318).

6. SAME—FIRST-DEGREE MURDER.

First-degree murder is all murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape, robbery, or burglary (CL 1948, § 750.316).

7. SAME—SECOND-DEGREE MURDER.

Second-degree murder is all kinds of murder not included within the definition of first-degree murder (CL 1948, § 750.317).

8. SAME—DISTINCTION BETWEEN FIRST- AND SECOND-DEGREE MURDER.

The difference between murder in the first degree and murder in the second degree is that in murder of the first degree there must be premeditation and deliberation and such a lapse of time as will give the mind time to calculate the purpose and intent of the killing (CL 1948, §§ 750.316, 750.317).

9. SAME—FIRST-DEGREE MURDER—SUFFICIENCY OF EVIDENCE.

Claim by defendant who pleaded guilty to an open charge of murder, that there was insufficient evidence to substantiate his conviction of first-degree murder *held*, without merit, where (1) defendant, after visiting briefly with the deceased, departed in his car and parked it along a dark country road where he waited for the deceased's car to come along, (2) defendant told the deceased he wanted to talk to him, causing the deceased to get out of his car, (3) defendant brutally killed deceased by repeated blows on the head with a tire iron, and (4) thereafter beat the deceased's sister in the same fashion when she got out of the deceased's car to see what had happened to her brother, leaving them both for dead, since such evidence clearly justified a trial court in finding defendant guilty of first-degree murder (CL 1948, § 750.316).

Appeal from Oakland; Beer (William John), J. Submitted Division 2 February 8, 1967, at Lansing. (Docket No. 1,925.) Decided June 27, 1967.

Carl L. Case was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *S. Jerome Bronson,* Prosecuting Attorney, *Patrick H. Oliver,* Chief Appellate Counsel, and *Robert W. Leutheuser,* Assistant Prosecuting Attorney, for the people.

*Renfrew, Edberg & Baldwin,* for defendant.

HOLBROOK, P. J.   Defendant was sentenced to life imprisonment in the State prison for southern Michigan at Jackson, on June 3, 1963, for the first-degree murder of Leonard Reed.   The pertinent facts to this appeal appear as follows:

On March 26, 1963, during the early part of the evening, Leonard Reed, age 16, and his sister, Naomi Reed, age 14, went to the Howard residence located at 5420 McKeachie road, in White Lake township, Oakland county, Michigan.   About 9 p.m. that same evening, the defendant, Carl Case, age 18, entered the Howard residence.   He said "Hello" to those present, including Leonard and Naomi Reed, refused to join a card game the others were playing but sat down and watched for about 5 minutes.   Then immediately before leaving the defendant engaged in a conversation with Leonard Reed.   Witness Mrs. Mertie Howard testified in part as follows:

"*Q.* * * * Then what happened?

"*A.* Then he says, 'I've got to go home, Leonard,' he says, 'I'll see you.'

"And Leonard says, 'Okay.' He says, 'If you come on a Saturday,' he says, 'come Saturday morning early, you can catch us to home.'

"And that was the conversation that they had.
* * *

"Q. Did Carl say anything?

"A. No. He just said, 'Okay, I'll see you.'

"Q. Then he left?

"A. Yes."

Within minutes after defendant left the Howard residence, Leonard and Naomi Reed also left. They were observed by Mrs. Howard to have driven north on McKeachie road towards White Lake road.

The sequence of events from this point are drawn from the testimony of Naomi Reed: On leaving the Howard residence in the dark and during a light rain, Leonard Reed drove up McKeachie road. Near the corner of McKeachie road and White Lake road, the defendant was observed sitting in his car which was parked alongside the road. Leonard Reed pulled up alongside defendant's car, Naomi rolled down the passenger side window, and defendant informed Leonard that he wished to talk to him. The window was rolled up after the conversation ended. Leonard Reed then parked his car in front of defendant's, got out and walked back to talk to defendant. Some 10 to 15 minutes later, her brother not returning, Naomi Reed got out of the car and began to walk to the rear of defendant's car. She was grabbed and struck on the head by defendant.

Leonard Reed was admitted to the Pontiac General Hospital where an autopsy performed March 27, 1963, established that cause of death was severe trauma of the brain resulting from some 17 different lacerations of the head.

Defendant was apprehended in New Mexico and brought back to Michigan. Information from the New Mexico authorities led to the finding of a bloody tire iron in a nearby field 127 feet from the scene of the crime.

Prior to the preliminary examination, but after having been advised by 2 court appointed attorneys

not to converse with anyone concerning the case except his counsel, defendant entered into a conversation with Detective Olepa of the Michigan State police who testified in part as follows:

"*Q.* (By Mr. Barry) What was the conversation?

"*A.* I asked Carl Case when he left the Howard home on the evening of March 26th which way did he travel on McKeachie road, and he said, 'north.'

"I said, 'Did you stop along the road?' He said yes, he had car trouble.

"I said, 'Did you wait for the Reed children to come along?' He said, 'No.'

"I said, 'Did they come along?' And he said, 'Yes.'

"I said, 'Did they stop alongside your car?' And he said, 'Yes.'

"I said, 'Then what happened?' He said, 'Leonard Reed backed his car up in front of my car and got out.'

"I said, 'Was there any conversation?' He said, 'Yes.'

"I said, 'What was the conversation?' He said, 'I asked Leonard Reed what he was going to do next week and Leonard replied he didn't know.' Carl then said, 'I asked him if we could get together next week and Leonard replied, "maybe." '

"I said, 'Then what happened?' He said, 'That is when I started to hit him.'

"I said, 'With a tire iron?' And he said, 'Yes.'

"I said, 'Did he fall to the ground?' And he said, 'Yes.'

"I said, 'Then what happened?' He said, 'I kept hitting him.'

"I said, 'Did he call for his sister?' And he said, 'Yes.'

"I said, 'Then what happened?' He said when she came out of the car he started to hit her.

"I said, 'What happened then?' He said, 'She rolled under my car.'

"I said, 'What did you do?' He said, 'I kept hitting her.'

"I said, 'How could you hit her under the car?' He said, 'Her head was sticking out.'

"I said, 'You kept hitting her?' And he said, 'Yes.'

"I said, 'What did you do then?' He said, 'I threw the tire iron out into the field.'

"I said, 'What did you do then?' He said, 'I reached down and pulled her out from under the car.'

"I said, 'Then what did you do?' He said, 'I got in my car and started to drive.'

"I said, 'Were you going any particular place?' And he said, 'No.'

"I then asked him whether he tried to molest the girl, and he said, 'No.'

"I said, 'Any reason for the killing?' He said, 'No reason.'

"I said, 'Did you leave them both for dead?' And he said, 'Yes.'

"That was the conversation."

Defendant was arraigned on a charge of first-degree murder. At the time of arraignment the trial court granted a motion for a sanity hearing. On the sanity hearing the trial court found defendant able to assist his counsel at trial.

On the date set for trial, while represented by the 2 court appointed attorneys, defendant, then 19 years of age, waived trial by jury and entered a plea of guilty. Pursuant to CL 1948, § 750.318 (Stat Ann 1954 Rev § 28.550) the trial court then proceeded by examination of witnesses to determine the degree of the crime, and after statements by both defense counsel and by the prosecution, determined the degree of murder as follows:

"*The Court.* Carl L. Case plead guilty to the information which recites a charge of murdering Leonard Reed on the 26th day of March, 1963, in the township of White Lake, Oakland county, Michigan, contrary to PA 1931, No 328, § 316. The court

has been assisted this morning in its necessity to determine the degree of this crime by certain testimony, by exhibits 1, 2 and 3 which are pictures of the body of the deceased, and by exhibit 4 which is a transcript of the testimony of the examination held before justice of the peace Elmer C. Dieterle. Among other things in this record is the undisputed linking of the tire iron and the use of it to cause the death of Leonard Reed. An examination of exhibit 1 clearly indicates that a dangerous instrument well calculated to cause death was used, and used with the result we here know of.

"Now, certainly, and I so rule, malice must be presumed from the use of that type of weapon by the defendant Carl L. Case in striking the head of Leonard Reed. Of course, the plea of guilty in a sense is judicial confession that the use of this weapon, which constitutes an assault and battery, did bring about the unlawful killing of Leonard Reed.

"About motive, it is my information that motive is not required in proof by the people. Now, was this murder accomplished with aforethought? Is there here anything indicating premeditation? Premeditation may be a matter of days or even longer. Premeditation may be a matter of minutes or even shorter. I am satisfied there is premeditation upon the record before me when I reflect this defendant had opportunity to have a dangerous weapon in his hand; there was time for the deceased Leonard Reed to alight from his automobile; there was time for the two to confront each other. Furthermore, premeditation is indicated by what happened to the sister of the deceased.

"The statement on the part of the officer Detective Olepa on page 19 of the transcript in answer to one of the detective's questions he said: 'I reached under the car and pulled the girl out.'

" 'I said, "Did you leave them both for dead?" and he said, "Yes." '

"This indicates conscious thought after the deed. And I say further that indicates premeditation. There is no yardstick in time on premeditation.

"I think, Mr. Renfrew and Mr. Edberg, and I want Mr. Case to know this, that you have well represented him, and I accepted the responsibility from the beginning when the matter was first brought to my attention of seeing that he had able counsel, and you are able counsel. Mr. Barry, of course, you have properly represented the people.

"Carl L. Case, it is my determination that you are guilty of murder in the first degree in the killing of Leonard Reed on March 26, 1963."

Defendant's appeal presents to this Court 2 issues which will be dealt with in order.

(1) *Is a 19-year-old male, represented by 2 court appointed attorneys competent to plead guilty to an open charge of murder?*

Defendant does not claim that the trial court failed to advise him of his rights—constitutional, statutory, or of court rule. Nor does he claim insufficient competency on his part as to understanding the nature of the accusation and the consequence of his plea of guilty. He merely claims that because he was 19 years of age he was not sufficiently competent to plead guilty to an open charge of murder.

The defendant had the benefit of 2 court appointed attorneys, a sanity hearing, and a fair hearing before a trial judge who proceeded at all times according to law. Under Michigan law, as at common law, defendant, at the age of 19 years, is presumed to have full legal capacity as an adult, and is subject to the same responsibility for his criminal acts. *People* v. *Ross* (1926), 235 Mich 433. The defendant fails to cite any authority in support of his claimed principle of law, and we have been unable to find any. It was not error to allow defendant to plead

guilty to an open charge of murder under the facts in this case.

(2) *Did the trial judge properly determine the degree of the crime, after conviction by confession, pursuant to CL 1948, § 750.318 (Stat Ann 1954 Rev § 28.550)?*

The pertinent part of the statute referred to in the second question reads as follows:

"The jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, ascertain in their verdict, whether it be murder of the first or second degree; but, if such person shall be convicted by confession, the court shall proceed by examination of witnesses to determine the degree of the crime, and shall render judgment accordingly."

The case of *People* v. *Roberts* (1920), 211 Mich 187 (13 ALR 1253), is authority for the principles of law that (a) the proceeding to determine the crime of murder, after a plea of guilty is not a trial, and (b) where a defendant confesses his guilt to an open charge of murder he no longer has a constitutional right to have a jury determine his guilt or the degree thereof.

Upon defendant's pleading guilty to murder and proper acceptance by the trial judge, it then became the judge's duty to follow the statute and classify the crime. The constitutionality of similar statutes has been directly passed upon and approved in *Hallinger* v. *Davis* (1892), 146 US 314 (13 S Ct 105, 36 L ed 986).

First-degree murder has been defined in our statute as:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt

to perpetrate any arson, rape, robbery or burglary,. shall be murder of the first degree." CL 1948, § 750.316 (Stat Ann 1954 Rev § 28.548).

Second-degree murder has been defined as: "All other kinds of murder shall be murder of the second degree." CL 1948, § 750.317 (Stat Ann 1954 Rev § 28.549).

In *People* v. *Dunn* (1925), 233 Mich 185, 196, murder in the first degree was differentiated from murder in the second degree in the following manner:

"The difference between murder in the first degree and murder in the second degree is that in murder of the first degree there must be premeditation and deliberation and such a lapse of time as will give the mind time to calculate the purpose and intent of the killing."

The trial judge in the case at hand had before him the following as to the physical facts and circumstances surrounding the death of Leonard Reed and the manner in which he was killed: the defendant entered the Howard residence, and from what he said and with the brevity of his stay, he was interested only in making arrangements to see Leonard Reed; shortly after defendant's departure, Leonard Reed, with his sister, also left; the defendant parked alongside a country road in the dark, waiting for the Reed car to come along; the defendant said to Leonard that he wanted to talk to him and after Leonard left his car to talk to defendant, the murder took place in an extraordinarily brutal and vicious manner—*i.e.,* severe and repeated blows upon the head of the victim with a tire iron; the record made on preliminary examination; the exhibits; the testimony of Detective Olepa relating the defendant's "story" of the crime as set forth, *supra;* and finally, that the defendant after killing Leonard Reed beat

Naomi Reed in a similar manner after she left the car to find out what happened to her brother.

In the case of *People* v. *Van Camp* (1959), 356 Mich 593, the homicide took place without the use of any weapon and the trial judge submitted to the jury the question of defendant's guilt as to first-degree murder. Mr. Justice EDWARDS stated on pp 600, 601 as follows:

"Nor do we think the charge was in error in submitting to the jury the question of first-degree murder. We note the absence of any weapon. But we entertain no doubt that kicking a man to death can constitute first-degree murder if the clear intent to kill is present." *People* v. *Collins* (1942), 303 Mich 34.

The facts in the instant case are more forceful in that the murder was committed with a lethal weapon, to wit, a tire iron. A clear intent to kill was present and malice can be inferred from the type of weapon used and the way in which the crime was committed.

We conclude under the testimony and evidence presented at the statutory hearing the necessary elements to a finding of first-degree murder of "lying in wait" or "any other kind of wilful, deliberate and premeditated killing"* were present. The trial judge was justified in determining defendant's guilt as being first-degree murder and in rendering judgment accordingly.

Affirmed.

FITZGERALD and J. H. GILLIS, JJ., concurred.

---

* *People* v. *Sutic* (1953), 41 Cal 2d 483 (261 P2d 241).