PEOPLE v WATKINS

Docket No. 225572. Submitted November 9, 2000, at Lansing. Decided July 24, 2001, at 9:05 A M. Leave to appeal sought.

Prentice D. Watkins pleaded guilty in the Jackson Circuit Court, Alexander C. Perlos, J., of open murder and possession of a firearm during the commission of a felony. Following a hearing held pursuant to MCL 750.318 for determination of the degree of the murder and at which the court called and questioned the defendant as a witness and allowed the prosecution to question the defendant, the court determined that the defendant had committed first-degree felony murder, i.e., murder committed during an attempted armed robbery. The defendant appealed by leave granted to challenge the felony-murder conviction, claiming that his right under US Const, Am V and Const 1963, art 1, § 17 against compelled self-incrimination was violated at the degree hearing when the court called him as a witness and allowed questioning by the prosecution.

The Court of Appeals *held*:

1. The trial court erred in compelling the defendant's testimony at the degree hearing. The defendant's waiver of the right to remain silent at the plea hearing did not operate as a blanket waiver of the right at all further proceedings. The trial court's error was a trial error, not a structural error, because it touched on the presentation of the case, could easily be assessed quantitively, and did not stem from the framework or conduct of the trial. The trial court's error was harmless and does not require reversal inasmuch as the error did not affect the outcome of the degree hearing. The trial court relied on evidence other than the defendant's testimony in concluding that the defendant fatally shot the victim during his attempt to rob the victim.

2. The defendant's claim of ineffective assistance of counsel at the plea hearing is without merit. The key issue to be determined in reviewing a claim of ineffective assistance of counsel in the context of a guilty plea is whether the defendant tendered the plea voluntarily and understandingly. Here, there is no evidence that the defendant did not voluntarily and understandingly plead guilty of open murder.

3. There was sufficient evidence to support the conviction of felony murder. There was evidence from which the trial court could find beyond a reasonable doubt that the defendant killed the victim with malice during the defendant's attempt to rob the victim while the defendant was armed with a dangerous weapon.

Affirmed.

1. CONSTITUTIONAL LAW — RIGHT AGAINST COMPELLED SELF-INCRIMINATION — OPEN MURDER — GUILTY PLEA — DEGREE HEARING.

A defendant who waives the right to remain silent when pleading guilty of open murder does not waive the right for purposes of subsequent proceedings such as the hearing held to determine whether the defendant is guilty of first-degree murder or second-degree murder (US Const, Am V; Const 1963, art 1, § 17; MCL 750.318).

2. CONSTITUTIONAL LAW — RIGHT AGAINST COMPELLED SELF-INCRIMINATION — OPEN MURDER — DEGREE HEARING.

A court conducting a hearing to determine the degree of murder a defendant who pleads guilty of open murder should be convicted of commits a trial error, not a structural error, in allowing testimony that violates the defendant's right against compelled self-incrimination; such error, if not properly preserved for appeal with an objection at trial, is harmless and does not require reversal where the error does not affect the outcome of the degree hearing (US Const, Am V; Const 1963, art 1, § 17; MCL 750.318).

3. CRIMINAL LAW — GUILTY PLEA — INEFFECTIVE ASSISTANCE OF COUNSEL.

A claim of ineffective assistance of counsel in the context of a guilty plea requires a determination whether the plea was tendered voluntarily and understandingly by the defendant.

4. CRIMINAL LAW — SUFFICIENCY OF EVIDENCE — APPEAL.

The Court of Appeals, when considering whether the prosecution presented sufficient evidence to support a conviction, views the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the elements of the crime were proved beyond a reasonable doubt.

5. HOMICIDE — FIRST-DEGREE MURDER — FELONY MURDER.

The crime of first-degree felony murder is comprised of the following elements: the killing of a human being, malice, and the commission, attempted commission, or assisting in the commission of one of the felonies enumerated in MCL 750.316(1)(b).

6. ROBBERY — ARMED ROBBERY.

> The elements of the crime of armed robbery are an assault and a felonious taking of property from the victim's person or presence while the defendant is armed with a dangerous weapon (MCL 750.529).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John G. McBain*, Prosecuting Attorney, and *Jerrold Schrotenboer*, Chief Appellate Attorney, for the people.

*Donald R. Cook*, for the defendant on appeal.

Before: DOCTOROFF, P.J., and HOEKSTRA and MARKEY, JJ.

DOCTOROFF, P.J. Defendant appeals by leave granted his conviction of first-degree felony murder, MCL 750.316(1)(b),[1] following a plea of guilty of open murder and a degree hearing pursuant to MCL 750.318. Defendant received a sentence of life imprisonment for the murder conviction and two years' imprisonment for the conviction of possession of a firearm during the commission of a felony. On appeal, defendant raises several assertions of error, including the argument that the trial court erred in compelling him to testify against himself at the degree hearing. We agree with defendant that the trial court should not have called him as a witness at the degree hearing; however, we find that the error was harmless.

I

On January 18, 1998, Allen Russell Stewart was shot in the back in his mother's front yard and died

---

[1] Defendant also pleaded guilty and was convicted of possession of a firearm during the commission of a felony, MCL 750.227b. Defendant does not challenge the felony-firearm conviction in this appeal.

the same day from his gunshot wound. There were no eyewitnesses to the shooting, although the next-door neighbor recalled seeing two men standing by a tree shortly before Allen was shot, and stated that she heard the gunshot. Allen's mother, Charlene Stewart, also heard a loud noise at the time of the shooting and observed Allen staggering into her kitchen with blood on his head. Charlene said that after Allen was shot, she was unable to locate his wallet or several pieces of jewelry that he normally wore. A police officer who responded to Charlene's 911 call noticed that Allen had duct tape on his wrists. After a search of Allen's room at his mother's house, the officer found what appeared to be drug-trafficking paraphernalia and 10.98 grams of crack cocaine with an estimated value of $1,000.

The police subsequently received information that defendant may have been involved in the shooting. A police detective traveled to Kentucky, where defendant was in jail on an unrelated charge, and interviewed defendant after he waived his *Miranda*[2] rights. According to the detective, defendant initially denied any involvement in the shooting or that he had ever been to Michigan. During a third interview, defendant allegedly admitted that he and a friend, Ardell Robinson, went to the neighborhood to attend a party and sat on the hood of Allen's car waiting for the party to begin. Defendant claimed that Allen pushed him and his gun went off as he slipped and fell. In a fifth interview, defendant allegedly told the detective that Robinson gave him a gun before they arrived in Allen's neighborhood. Defendant said that

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Robinson grabbed Allen, and when Allen broke away and approached defendant, he pulled his gun and it went off. The detective claimed that defendant further admitted that he and Robinson discussed robbing someone.

The prosecution charged defendant with open murder and felony-firearm. At a hearing on November 4, 1999, defendant pleaded guilty to both charges and claimed that he shot Allen after the two fought. During the course of the plea hearing, the court informed defendant that by pleading guilty he was waiving his right to a jury trial and the right to remain silent at that trial. Defendant indicated his understanding of his rights and the consequences of his plea and waived his rights on the record.

On November 8, 1999, the court held a degree hearing pursuant to MCL 750.318.[3] At the hearing, the prosecution presented several witnesses, including Charlene Stewart, the police officer who responded to the scene following the shooting, and the detective who interviewed defendant. The prosecution also called a forensic pathologist who testified that Allen had scrapes on his forehead and face and died as a result of the gunshot wound. According to the pathologist, the bullet entered Allen's back, traveled down through his body, perforating his aorta, and stopped in his thigh. After the prosecution and de-

---

[3] MCL 750.318 provides in pertinent part:

The jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, ascertain in their verdict, whether it be murder of the first or second degree; but, if such person shall be convicted by confession, the court shall proceed by examination of witnesses to determine the degree of the crime, and shall render judgment accordingly.

fense rested, the court called defendant as a witness, and he was questioned both by the court and the prosecution. Defense counsel did not object to the court calling defendant as a witness or to defendant's testimony. During his testimony, defendant denied robbing Allen and continued to insist that the shooting occurred as the two fought.

In an oral decision following the degree hearing, the trial court found that defendant planned to rob Allen and that the shooting could not have happened in the manner described by defendant. The court then concluded that the killing constituted felony murder because it occurred during the course of a robbery.

II

Defendant argues on appeal that the trial court's decision to call him as a witness at the degree hearing and allow the prosecution to cross-examine him violated his Fifth Amendment right against compelled self-incrimination. Although this Court has addressed matters involving the degree hearing procedure embodied in MCL 750.318, the argument raised by defendant appears to be an issue of first impression.

It is unquestioned that both the United States and Michigan Constitutions prohibit the government from compelling a criminal defendant to testify against himself. US Const, Am V; Const 1963, art 1, § 17; *People v Cheatham*, 453 Mich 1, 9; 551 NW2d 355 (1996). This right has been found to extend beyond the defendant's conviction and affords protection against compelled self-incrimination in the sentencing phase of a criminal proceeding. *Estelle v Smith*, 451 US 454, 462-463; 101 S Ct 1866; 68 L Ed 2d 359 (1981); *People*

*v Wright*, 431 Mich 282, 295; 430 NW2d 133 (1988). "[T]he availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *Estelle, supra* at 462, quoting *In re Gault*, 387 US 1, 49; 87 S Ct 1428; 18 L Ed 2d 527 (1967).

However, when a defendant pleads guilty of a crime, he generally waives the right against compelled self-incrimination for the purpose of the plea-taking procedure. *People v Banks*, 51 Mich App 406, 407; 214 NW2d 890 (1974); *Boykin v Alabama*, 395 US 238, 243; 89 S Ct 1709; 23 L Ed 2d 274 (1969). In addition, a trial court is required to inform a defendant that by pleading guilty he is waiving several critical constitutional rights, including the right to remain silent and the right to have the court ascertain that the defendant understands the waiver. MCR 6.302(B)(3); *People v Jaworski*, 387 Mich 21, 30; 194 NW2d 868 (1972). The question before this Court here is whether a criminal defendant who waives his right to remain silent in connection with a plea of guilty of open murder also waives that right for the purpose of the degree hearing conducted pursuant to MCL 750.318.

The "open murder" statute, MCL 750.318 establishes a procedure for determining the degree of murder when the information does not charge the defendant with a specific degree of murder. When a person charged with murder is convicted by a jury, MCL 750.318 requires the jury to "ascertain in their verdict, whether it be murder of the first or second degree." However, when a defendant is "convicted by confession," the court must "proceed by examination of wit-

nesses to determine the degree of the crime" and "render judgment accordingly." *Id.*; *People v Martin*, 316 Mich 669, 671-672; 26 NW2d 558 (1947). The statute does not specify whether the defendant retains any constitutional rights regarding the hearing, but we have held that the degree hearing following a guilty plea is not a trial, and a defendant who pleads guilty of open murder is no longer entitled to have a jury determine the degree of murder. *People v Case*, 7 Mich App 217, 225; 151 NW2d 375 (1967); *People v Roberts*, 211 Mich 187, 194-195; 178 NW 690 (1920), overruled on other grounds in *People v Kevorkian*, 447 Mich 436; 527 NW2d 714 (1994). It is apparent that certain constitutional rights, such as the right to be tried by a jury, are waived by pleading guilty of open murder.

Although there is no authority directly addressing the issue raised in this case, this Court has considered similar issues involving the open murder statute. In *People v Pearson*, 24 Mich App 270; 180 NW2d 53 (1970), the defendant pleaded guilty of open murder, and the trial court conducted a degree hearing during which the court apparently questioned the defendant. Relying on *Case, supra,* this Court held that a degree hearing is not the equivalent of a trial and that the trial court did not err in eliciting information from the defendant. *Id.* at 272. However, the apparent issue in *Pearson* was whether the trial court exceeded its authority by questioning the defendant instead of deferring to the prosecutor, not whether the questioning itself was permissible. *Id.* Further, the *Pearson* opinion does not indicate whether the defendant waived his Fifth Amendment right against self-incrimination during or sometime before the hearing,

nor does it indicate if the defendant objected to his compelled testimony.[4]

This Court further explored the degree hearing procedure in *People v Berry (On Remand)*, 198 Mich App 123; 497 NW2d 202 (1993). In *Berry*, defense counsel entered a plea of guilty of open murder on behalf of the defendant. The defendant challenged the trial court's acceptance of the plea because the court did not directly question him to establish the existence of the crime and his participation in that crime as required by *People v Barrows*, 358 Mich 267, 272; 99 NW2d 347 (1959).[5] The *Berry* Court found that because the degree hearing process involves not only a plea, but a testimonial hearing and fact finding by the trial court, the analysis of a plea under the open murder statute should be different from that of a summary plea proceeding. *Berry, supra* at 126. We further held that the questioning dictated by *Barrows* does not necessarily apply to an open murder proceeding and that the court may ascertain the accuracy of the plea through other evidence or testimony. *Berry, supra* at 126-127. Although *Berry* allows a trial court to avoid direct questioning of a defendant in the plea portion of an open murder proceeding, it does

[4] It should be noted that the factual and analytical portions of the *Pearson* opinion are rather sketchy, making it difficult, if not impossible, to analogize the facts and holding of that case to the present case.

[5] This requirement is also contained in MCR 6.302(D), which states that the court must question the defendant to establish support for a finding that the defendant is guilty of the offense of which the defendant is pleading. In addition, MCL 768.35 obligates a trial court, before accepting a guilty plea, to "become satisfied after such investigation as he may deem necessary . . . that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence."

not address whether a trial court or a prosecutor may question a defendant during the degree hearing.[6]

It is apparent that the existing case law of this jurisdiction provides no clear answer to the question whether a criminal defendant who pleads guilty of open murder retains his Fifth Amendment right against compelled self-incrimination for the purpose of the degree hearing. However, a recent United States Supreme Court decision addressing the extent of a waiver of the right against compelled self-incrimination following a guilty plea lends some guidance on this issue.

In *Mitchell v United States*, 526 US 314; 119 S Ct 1307; 143 L Ed 2d 424 (1999), the defendant pleaded guilty of conspiring to distribute cocaine, but reserved the right to contest during the sentencing phase of the proceeding the actual amount of drugs she distributed. The district court engaged in the plea colloquy required by FR Crim P 11, which includes the determination that the defendant understood that she was waiving her right to trial and her right to remain silent at trial. During sentencing, the defendant did not testify or put forth evidence to dispute the government's proofs regarding the amount of cocaine she distributed. The district court concluded that the defendant waived her right to remain silent because of her guilty plea, and it drew an adverse inference from her refusal to testify during the sentencing proceeding.

---

[6] The defendant in *Berry* also petitioned for a writ of habeas corpus in federal court. *Berry v Mintzes*, 529 F Supp 1067 (ED Mich, 1981). When the district court denied his petition, Berry appealed to the United States Sixth Circuit Court of Appeals, which affirmed the lower court's decision. *Berry v Mintzes*, 726 F2d 1142 (CA 6, 1984). However, neither of these cases addresses the key issue presented by defendant in this appeal.

On appeal, the Supreme Court held that the plea colloquy did not entail a waiver of the defendant's right to remain silent during sentencing. *Mitchell, supra* at 322-323.

> The purpose of a plea colloquy is to protect the defendant from an unintelligent or involuntary plea. The Government would turn this constitutional shield into a prosecutorial sword by having the defendant relinquish all rights against compelled self-incrimination upon entry of a guilty plea, including the right to remain silent at sentencing.
>
> There is no convincing reason why the narrow inquiry at the plea colloquy should entail such an extensive waiver of the privilege. [*Id.* at 322.]

The Court found that the purpose of FR Crim P 11 is to inform the defendant of what she is losing by her decision to forgo a trial, not to elicit a waiver of the privilege against self-incrimination for further proceedings. *Mitchell, supra* at 324. The Court noted that incrimination is not complete once guilt is determined and that a defendant has a legitimate fear of adverse consequences from testifying at sentencing. *Id.* at 325-326. Relying on *Estelle, supra,* the Court held that compelling a defendant to testify against his will at a sentencing hearing clearly contravenes the Fifth Amendment. *Id.* at 326. " 'The essence of this basic constitutional principle is "the requirement that the State which proposes to convict *and punish* an individual produce the evidence against him by the independent labor of its officers, not by the simple, cruel expedient of forcing it from his own lips." ' " *Id.,* quoting *Estelle, supra* at 462, quoting *Columbe v Connecticut,* 367 US 568, 581-582; 81 S Ct 1860; 6 L Ed 2d 1037 (1961) (emphasis in *Estelle*).

In comparing the facts of *Mitchell* to this case, it is apparent that defendant's degree hearing was very similar to the sentencing proceeding in *Mitchell*. Like the defendant in *Mitchell*, defendant's incrimination was not complete once the court accepted his plea of guilty of open murder and he was subject to further adverse consequences at the degree hearing. In fact, defendant here was in far greater jeopardy than the defendant in *Mitchell* because his guilty plea did not conclusively determine his level of culpability for the crime and affected not only his punishment, but the nature of his conviction. We agree with the *Mitchell* Court that defendant's acknowledgment at the guilty plea hearing that he was waiving his right to trial and to remain silent at trial should not have operated as a blanket waiver of his right to remain silent at all further proceedings. *Mitchell, supra* at 322. For these reasons, we hold that a criminal defendant who pleads guilty of open murder does not waive his right to remain silent at the hearing conducted pursuant to MCL 750.318 to determine the degree of murder. Here, defendant had the right to refuse to testify at the degree hearing, and the trial court erred in compelling defendant to testify against himself.

III

Although we determined that the trial court's decision to call defendant as a witness at the degree hearing was an error, reversal is not necessarily required to remedy the error. Errors committed at trial, including certain errors of constitutional magnitude, do not require reversal where the error is determined to be harmless after analysis under the plain error rule. See

*People v Carines*, 460 Mich 750, 761-765; 597 NW2d 130 (1999).

The first step in determining whether an error is harmless is to determine whether the error was a structural error or a trial error. *People v Duncan*, 462 Mich 47, 51; 610 NW2d 551 (2000). Structural errors are defects that affect the framework of the trial, infect the truth-gathering process, and deprive the trial of constitutional protections without which the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. *United States v Pavelko*, 992 F2d 32, 35 (CA 3, 1993). A structural error is intrinsically harmful regardless of the effect on the outcome and denies a defendant basic protections without which a trial cannot reliably serve as a vehicle for determining guilt or innocence. *Duncan, supra* at 51. By contrast, a trial error is an error in the trial process occurring in the presentation of the case that can be quantitatively assessed. *Id.*; *People v Anderson (After Remand)*, 446 Mich 392, 405-406; 521 NW2d 538 (1994).

To date, no Michigan court has held whether compelled self-incrimination is a structural error. Our Supreme Court recently held that the failure to properly instruct a jury on the elements of the charged crime is a structural error. *Duncan, supra* at 52-53. Structural errors have also been found regarding (1) a complete denial of counsel, (2) a biased trial judge, (3) racial discrimination in grand jury selection, (4) denial of self-representation, (5) denial of a public trial, and (6) a defective reasonable doubt instruction. *Id.* Our state courts and the federal courts have found structural error in only a limited class of cases and have also held that structural errors are the excep-

tion, not the rule. *Duncan, supra* at 51; *United States v Pearson,* 203 F3d 1243, 1261 (CA 10, 2000).

At least one federal court concluded that the admission at trial of a statement that constituted a violation of a defendant's Fifth Amendment rights was a harmless trial error. In *Pavelko, supra,* the defendant requested court-appointed counsel to represent him in his trial on a charge of bank robbery. In order to obtain that counsel, the defendant had to complete an affidavit listing his financial resources and appear at a hearing before a magistrate. At trial, the prosecution sought to prove circumstantially that the defendant made recent purchases with illegally obtained funds, and the trial court allowed the prosecution to admit the affidavit and the defendant's testimony at the hearing as proof that the defendant had no independent, legal source of income.

The Third Circuit Court of Appeals in *Pavelko* found that admission of the affidavit and testimony created a conflict between the defendant's Fifth Amendment right against self-incrimination and his Sixth Amendment right to appointed counsel. *Pavelko, supra* at 34. The *Pavelko* court then determined that the error was a trial error, not a structural error, because it touched on the presentation of the case, could easily be assessed quantitatively, and did not stem from the framework or conduct of the trial. *Id.* at 35. The court also found that the error was harmless beyond a reasonable doubt because there was no reasonable probability that the outcome of the case would have been different if the trial court had not admitted the affidavit and testimony. *Id.* at 36.

We find that the circumstances of this case are analogous to the facts of *Pavelko* and that the error in this case was likewise a trial error, not a structural error. Defendant's compelled testimony and the effect of that testimony was an error in the presentation of one particular portion of the case, not a defect in the entire framework of the case. In addition, unlike clear structural errors such as deprivation of counsel or bias of the court, this error was easily quantifiable. The error began when the court called defendant to the witness stand and ended when defendant concluded his testimony. Were we to simply extract the erroneous testimony from the degree hearing, an examination of the remainder of the proceeding would expose no fundamental unfairness in the conduct of the case. It is apparent that the trial court's erroneous decision to compel defendant to testify against himself was not a structural error.

Because the error was not structural, harmless error analysis applies and the appropriate analysis depends on whether the error is preserved or forfeited. In this case, it is clear that defendant did not object at trial to the court's decision to compel him to testify and therefore failed to properly preserve the error. In *Carines, supra* at 763, our Supreme Court held that a defendant forfeits his constitutional rights unless he timely asserts them. To avoid forfeiture under the plain error rule, the defendant must show that (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *Id.* In order to establish that the error affected his substantial rights, defendant would have to show that the error affected the outcome of the proceeding. *Id.*

In this case, it is apparent that the error did not affect the outcome of the proceeding. Our review of the record reveals that the prosecution presented adequate evidence that, in the absence of defendant's compelled testimony, would have been sufficient for the trial court to find beyond a reasonable doubt that the shooting occurred during the course of a robbery and, therefore, constituted felony murder upon the death of Allen Stewart. Further, the record indicates that defendant's testimony did not support the court's ultimate conclusion that the killing constituted felony murder. Even when questioned by the prosecution, defendant consistently maintained that he did not intend to rob Allen and the shooting was an accident that resulted from a dispute. It is also apparent from the trial court's explanation on the record that the court relied on other evidence to reach its finding that defendant was guilty of felony murder. Because it is clear that the error did not affect the outcome of the proceedings, defendant forfeited the error.

Where a defendant forfeits an error, reversal of the trial court's determination is warranted only where the error seriously affected the fairness, integrity, or public reputation of the judicial proceeding. *Carines, supra* at 763. In this case, we find no evidence that this error resulted in a proceeding characterized by unfairness or lack of integrity. The prosecution's proof of defendant's culpability for first-degree felony murder was compelling and was not diminished by the court's erroneous decision to call defendant as a witness.

In conclusion, we agree with defendant that the trial court erred in compelling him to testify against himself at the degree hearing. However, because we

find that the error was harmless, reversal of defendant's conviction is not warranted.

IV

Defendant also argues that his trial counsel's representation was ineffective because he advised defendant to plead guilty of open murder. Because defendant failed to raise this issue in a request for a new trial or a *Ginther*[7] hearing, our review is limited to the existing record. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000).

To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was objectively unreasonable and the representation was so prejudicial that he was deprived of a fair trial. *People v Pickens*, 446 Mich 298, 309; 521 NW2d 797 (1994). To demonstrate prejudice, the defendant must show that, but for counsel's error, there was a reasonable probability that the result of the proceedings would have been different. *People v Henry*, 239 Mich App 140, 146; 607 NW2d 767 (1999). This Court presumes that counsel's conduct fell within a wide range of reasonable professional assistance, and the defendant bears a heavy burden to overcome this presumption. *People v Mitchell*, 454 Mich 145, 156; 560 NW2d 600 (1997); *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

In this case, defendant argues that his counsel's advice to plead guilty of open murder was unreasonable because by pleading guilty defendant waived crit-

---

[7] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

ical rights and subjected himself to the possibility of being found guilty of first-degree murder without receiving any benefit in return. However, in reviewing a claim of ineffective assistance of counsel in the context of a guilty plea, the key issue to be determined is whether the defendant tendered the plea voluntarily and understandingly. *People v Thew*, 201 Mich App 78, 89; 506 NW2d 547 (1993). "The question is not whether a court would, in retrospect, consider counsel's advice to be right or wrong, but whether the advice was within the range of competence demanded of attorneys in criminal cases." *Id.* at 89-90.

We find no evidence in the existing record that defendant did not voluntarily and understandingly plead guilty of open murder. In fact, the record indicates that defendant was properly advised of his rights at the plea hearing, and he indicated that he understood that he waived those rights by pleading guilty. Defendant also argues that he was never informed that by pleading guilty he waived an appeal as of right. Defendant attempts to support this claim by attaching an affidavit to his brief on appeal; however, this document was not a part of the lower court record and will not be considered by this Court. *Snider, supra* at 423. Further, although there is no evidence that either the trial court or defense counsel specifically informed defendant that he would waive his right to appeal by pleading guilty, because we granted defendant leave to appeal, he is unable to demonstrate prejudice resulting from this alleged error. Hence, we find no merit to defendant's argument that his counsel's advice was objectively unreasonable or that but for counsel's alleged ineffective assistance the outcome would have been different.

In a related argument, defendant claims that his guilty plea was not knowing or voluntary because he was not informed that the plea would result in a waiver of his right to appeal. For the reasons cited above, we reject this argument and decline to reverse defendant's conviction on this basis.

V

Defendant's final argument is that the evidence was insufficient to support the trial court's conclusion that defendant was guilty of felony murder. In considering whether the prosecution presented sufficient evidence to support a conviction, we view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the elements of the crime were proved beyond a reasonable doubt. *People v Lemmon*, 456 Mich 625, 633-634; 576 NW2d 129 (1998); *People v Truong (After Remand)*, 218 Mich App 325, 337; 553 NW2d 692 (1996).

The elements of first-degree felony murder are (1) the killing of a human being, (2) malice, and (3) the commission, attempted commission, or assisting in the commission of one of the felonies enumerated in MCL 750.316(1)(b). *Carines, supra* at 768. MCL 750.316(1) states in pertinent part:

A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life:

\* \* \*

(b) Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a

major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping.

In this case, defendant pleaded guilty of murdering Allen, which established the first and second elements of the crime. Therefore, to prove that defendant committed felony murder, the prosecution had to present sufficient evidence that defendant committed the murder during the course of one of the listed felonies.

Here, the trial court concluded that the applicable felony was the attempted armed robbery of Allen Stewart. The elements of armed robbery are (1) an assault and (2) a felonious taking of property from the victim's person or presence (3) while the defendant is armed with a dangerous weapon. *People v Norris*, 236 Mich App 411, 414; 600 NW2d 658 (1999). The offense of assault requires proof that the defendant made either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery. *People v Terry*, 217 Mich App 660, 662; 553 NW2d 23 (1996).

Our review of the record leads to the conclusion that the prosecution presented sufficient evidence that defendant killed Allen while armed and attempting to rob him. The detective who investigated the case testified that defendant admitted that he possessed a gun on the night in question and he and Robinson discussed robbing someone. Charlene Stewart and the police officer who investigated the crime scene stated that Allen's wallet and his jewelry were missing after the shooting. In addition, there was evi-

dence that Allen engaged in drug trafficking, which leads to the reasonable inference that he was a likely target of a robbery. Viewing these facts in the light most favorable to the prosecution, we believe that the trial court could have concluded beyond a reasonable doubt that defendant robbed Allen, and we find no error in its determination that defendant was guilty of first-degree felony murder.

Affirmed.