*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 10, 2022

Plaintiff-Appellee,

v

Nos. 347930; 348742
Montcalm Circuit Court

ARIK JON CHAPMAN,

LC Nos. 2018-023960-FH;
2018-023961-FH

Defendant-Appellant.

Before: BORRELLO, P.J., and M. J. KELLY and REDFORD, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant, Arik Jon Chapman, was convicted by jury of assault by strangulation, MCL 750.84(1)(b); disarming a police officer, MCL 750.479b(2); two counts of resisting and obstructing a police officer resulting in injury, MCL 750.81d(2); two counts of malicious destruction of police property, MCL 750.377b; 12 counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1); and second-degree arson, MCL 750.73(1). Chapman was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for assault by strangulation; 6 to 15 years' imprisonment for disarming a police officer; 4 to 15 years' imprisonment for each count of resisting and obstructing a police officer resulting in injury; 4 to 15 years' imprisonment for each count of malicious destruction of police property; 3 to 15 years' imprisonment for each count of assaulting, resisting, or obstructing a police officer; and 20 to 50 years' imprisonment for second-degree arson. He now appeals as of right. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

This case arose out of Montcalm County Sheriff's Sergeant Steven Snyder executing an arrest warrant on Chapman. During the encounter, Chapman assaulted Sergeant Snyder. He then ran to his cousin's home and hid in the attic. After being found, he set fire to small pieces of

---

[1] *People v Chapman*, unpublished order of the Court of Appeals, entered May 14, 2019 (Docket No. 347930).

insulation and threw the burning pieces toward officers who were trying to apprehend him. Chapman then went out on to the roof, fell off, and ran before ultimately being apprehended.

## II. RIGHT TO MAINTAIN INNOCENCE

### A. STANDARD OF REVIEW

Chapman argues that his lawyer conceded guilt on the assault-by-strangulation charge, thereby impinging on his right to maintain his innocence. Chapman did not raise the issue of his right to maintain his innocence. Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

### B. ANALYSIS

Chapman argues that this case is similar to *McCoy v Louisiana*, ___ US ___; 138 S Ct 1500; 200 L Ed 2d 821 (2018). In *McCoy*, the defense lawyer conceded during the guilt phase of his capital trial that the defendant committed three murders. *Id*. at ___; 138 S Ct at 1506-1507. Specifically, during his opening statement to the jury, the defense lawyer stated that "there was 'no way reasonably possible' that they could hear the prosecution's evidence and not reach 'any other conclusion that [the defendant] was the cause of theses individuals' death." *Id*. at ___; 138 S Ct at 1506. He also stated that "the evidence is 'unambiguous,' 'my client committed three murders.' " *Id*. at ___; 138 S Ct at 1507. The defendant protested and told the court that his lawyer was " 'selling [him] out' " by maintaining that he " 'murdered his family.' " *Id*. at ___; 138 S Ct at 1506. The defendant testified at trial in his own defense, maintained his innocence, and pressed an alibi. *Id*. at ___; 138 S Ct at 1507. The defendant "insistently maintained he was out of the State at the time of the killings and that corrupt police killed the victims when a drug deal went wrong." *Id*. at ___; 138 S Ct at 1506. He told his lawyer to not make the concessions, and pressed him to pursue acquittal. *Id*. His lawyer did not do this; during his closing argument, he reiterated that the defendant was the murderer. *Id*. at ___; 138 S Ct at 1507. During the penalty phase of trial, the defendant's lawyer again conceded that the defendant committed the three murders. *Id*. His strategy was to admit to the killing and then ask for mercy in view of the defendant's " 'serious mental and emotional issues.' " *Id*. On appeal, the United States Supreme Court held that "[w]hen a client expressly asserts that the objective of '*his* defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it by conceding guilt." *Id*. at ___; 138 S Ct at 1509, quoting US Const, Am VI.

In this case, during opening statements, Chapman's lawyer stated that "my client is absolutely, positively, guilty, guilty, guilty, of attacking Sergeant Snyder. There is absolutely no doubt about that." He stated that Chapman "beat the snot out of Sergeant Snyder." Chapman's lawyer also stated that Chapman was guilty of some—but not all—of the counts against him. Then, during closing arguments, he stated that Chapman was "absolutely, positively guilty of assaulting Sergeant Snyder." However, he also stated that the testimony of Chapman's mother, Jann Pennock, and Chapman both stated that "at no time did [Chapman] attempt to strangle Sergeant Snyder." He argued that the only testimony that Chapman strangled Sergeant Snyder was from

Sergeant Snyder. He added that the only individual not involved in the melee was Pennock and her testimony "should mean something." Chapman's lawyer also argued:

> And so, is Sergeant Snyder right about what happened? Well, maybe he is. Again, there's only those three people there, at least that anybody know [sic] of. There's only those three people that saw them. And so, could he be right? Yes, he could be. But there is a high likelihood that he's wrong? Sure. He was scared. He's disoriented and he's not in a good position. Can he tell what is happening? I don't know. Now you might say, well, yeah but let's say he can. He would know the difference between being strangled and something else. Maybe he would. Maybe he was short of breath because [Chapman] was on his back and trying to put the gun in his mouth. I have no idea. Would that have made it harder for him to breathe? Yes, it's different than strangling.

Thus, viewed in context, Chapman's lawyer argued that Sergeant Snyder may have been confused about what transpired because he was scared, disoriented, and not in a good position. Although Chapman's lawyer never directly asked the jury to find Chapman not guilty of assault by strangulation, he asserted that the testimony presented a question of credibility of the witnesses and implied that that jury should believe Pennock and Chapman that Chapman did not strangle Sergeant Snyder. As a result, Chapman's lawyer argued that the prosecution did not prove beyond a reasonable doubt all the elements of assault by strangulation. The record does not, therefore, support Chapman's assertion that his lawyer conceded guilt the assault-by-strangulation charge.

Moreover, unlike the defendant in *McCoy*, Chapman did not vociferously, repeatedly, or adamantly argue against his lawyer's admission of his *assault* on Sergeant Snyder. See *McCoy*, 138 S Ct at 1507. To the contrary, Chapman testified and admitted numerous times that he had assaulted Sergeant Snyder, and, during his testimony, he even apologized to Sergeant Snyder for beating him up. Accordingly, although Chapman and his lawyer *both* conceded Chapman's guilt as it related to assaulting Sergeant Snyder, *neither* conceded that Chapman strangled Sergeant Snyder which is a necessary element of MCL 750.84. We therefore conclude that a plain error did not occur, and reversal is not required under *McCoy*.

## III. INEFFECTIVE ASSISTANCE

## A. STANDARD OF REVIEW

Alternatively, Chapman argues that his lawyer provided constitutionally ineffective assistance by conceding guilt on Chapman's assault-by-strangulation charge. Whether effective assistance has been denied is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Because we denied Chapman's motion for a *Ginther*[2] hearing on this issue, our review of his claim is for errors apparent on the record. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## B. ANALYSIS

"Both the United States and Michigan constitutions provide that the accused shall have the right to counsel for his defense." *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). However, it is the defendant's burden to prove that his lawyer did not provide effective assistance. *People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018). To prove that his lawyer was not effective, the defendant must show that: (1) his lawyer's performance was so deficient that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that his lawyer's deficient performance prejudiced the defendant. *Id*. "To demonstrate prejudice, the defendant must show that, but for counsel's error, there was a reasonable probability that the result of the proceedings would have been different." *People v Watkins*, 247 Mich App 14, 30; 634 NW2d 370 (2001). "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "[W]here the evidence obviously points to defendant's guilt, it can be better tactically to admit guilt and assert a defense or to admit guilt on some charges but maintain innocence on others." *People v Matuszak*, 263 Mich App 42, 60; 687 NW2d 342 (2004). A particular strategy does not constitute ineffective assistance simply because it does not work. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

Chapman's lawyer admitted guilt on some charges but maintained innocence on others. His opening statement implied that his trial strategy was to admit that Chapman was guilty of some of the "lighter" offenses, while contesting his guilt on the more severe charge of assault by strangulation by arguing that, although an assault occurred, a strangulation did not because, Sergeant Snyder was confused about what transpired. Indeed, there was no question that Chapman was guilty of assaulting Sergeant Snyder; he testified to doing so, his mother testified to witnessing the assault, Sergeant Snyder testified to the assault, and additional witnesses testified to the injuries Sergeant Snyder sustained in the assault. Because the evidence obviously pointed to Chapman's guilt as it related to assaulting Sergeant Snyder, Chapman's lawyer's tactical decision to make that admission while maintaining Chapman's innocence as it related to the strangulation element was a reasonable trial strategy that we will not second-guess. See *Russell*, 297 Mich App at 716. Moreover, the fact that the strategy did not work does not constitute ineffective assistance. See *Kevorkian*, 248 Mich App at 414-415.

Additionally, even if Chapman's lawyer's actions fell below an objective standard of reasonableness, Chapman was not prejudiced by a concession that he assaulted, but did not strangle Sergeant Snyder. Chapman admitted that he punched Sergeant Snyder "three times," that he "was shaking him . . . [and] hitting the back of his vest," and that he knew Sergeant Snyder was hurt because he "knocked him out with one punch." Therefore, there is not a reasonable probability that, even if Chapman's lawyer had not conceded that Chapman assaulted Sergeant Snyder, the result of the proceedings would have been different. See *Watkins*, 247 Mich App at 30. Accordingly, Chapman has failed to show that he was prejudiced by his lawyer's alleged error in conceding guilt on some offenses and some elements of the assault-by-strangulation charge.

## IV. SENTENCING PROPORTIONALITY

### A. STANDARD OF REVIEW

Chapman argues that his sentence for second-degree arson is not proportionate or reasonable to his offense and to his circumstances. "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The sentence imposed must be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 460 (quotation marks and citation omitted).

### B. ANALYSIS

Chapman's 20-year minimum sentence falls within the guidelines range of 87 to 290 months. MCL 769.34(10) provides, in relevant part, "If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals *shall affirm* that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence." (Emphasis added.) Chapman has not shown that the trial court erred in scoring his guidelines, and there is no indication that the trial court relied on any inaccurate information in determining defendant's sentence. Instead, when imposing Chapman's sentence, the trial court relied on Chapman having been convicted of "three prior felonies and four prior misdemeanors," and the circumstances of the offense. See MCL 769.34(10). Because his minimum sentence falls within the applicable guidelines range, the trial court did not abuse its discretion. See *Anderson*, 322 Mich App at 636 (stating that when a defendant is sentenced within the applicable guidelines range, this Court need not evaluate the sentences for reasonableness "and must affirm [the defendant's] sentences unless there was an error in the scoring or the trial court relied on inaccurate information.").

## V. SHACKLING AND JAIL ATTIRE

After initial briefing was submitted to this Court in these cases, Chapman's appellate lawyer represented that he had received information that Chapman was visibly shackled and wore jail attire during trial in the presence of the jury. Chapman's appellate lawyer moved for a remand, seeking an evidentiary hearing to determine whether Chapman was unjustifiably shackled and forced to wear jail attire, and if so, whether a new trial was warranted. We granted the motion.

At the subsequent evidentiary hearing, the trial court heard testimony from Chapman's lawyer, three law enforcement officers, and three jurors. After hearing the testimony, the trial court denied the motion for a new trial. Although the court accepted the jurors' testimony that they observed Chapman in shackles and jail attire during trial, the court nonetheless found that a new trial was not warranted because each of the testifying jurors stated that they reached their verdict on the evidence alone, that Chapman's appearance had no impact on their decision, and that they recalled no conversations among jurors about Chapman's appearance.

On appeal, Chapman argues that his due-process rights were violated when he was visibly shackled and in jail attire during trial. "The law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need." *Deck v Missouri*, 544 US 622, 626; 125 S Ct 2007; 161 L Ed 2d 953 (2005).

-5-

Security concerns must arise specifically in regard to the defendant on trial and must be articulated on the record. *Id.* at 629; *People v Dunn*, 446 Mich 409, 425; 521 NW2d 255 (1994). When a defendant wears shackles visible to the jury without the trial court making adequate justification, "[t]he state must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." *Deck*, 544 US at 635 (quotation marks and citation omitted; second alteration in original). A defendant can also be denied due process of law by being compelled to go to trial wearing jail attire. *People v Lee*, 133 Mich App 299, 300; 349 NW2d 164 (1984).

In this case, the trial court found that, based on the jurors' testimony, Chapman was visibly shackled at the legs and wearing jail attire, and it accepted the foreman's recollection that Chapman's wrists were restrained when he testified at trial. The trial court also acknowledged that it made no findings justifying Chapman's shackling. Therefore, accepting the jurors' testimony, the trial court erred when it allowed Chapman to be visibly shackled at trial.

Nonetheless, a new trial is not warranted because the prosecution proved beyond a reasonable doubt that the shackling did not contribute to the verdict. See *Deck*, 544 US at 635. Each of the testifying jurors testified, repeatedly, that Chapman's shackling and his attire did not affect their decision. Each testified that they made their decision to convict based on the evidence alone. Each juror testified that they were aware of no discussions among jurors about Chapman's shackles or his attire. The jurors' testimony is corroborated by the trial court's own account of the trial. The trial court described the trial as "emotional" and the evidence as "overwhelming," stating that, absent a "boneheaded" mistake by the prosecution, the same outcome would result 100 out of 100 times if the trial were ran anew. Therefore, because the prosecution has established beyond a reasonable doubt that the shackling did not contribute to the verdict, Chapman is not entitled to relief.

Chapman also argues that his lawyer was ineffective for failing to object to Chapman being shackled, failing to take the necessary precautions to make sure the jury could not observe the shackles, and failing to ensure that Chapman had suitable attire to wear at trial. We decline to address this argument, however, as it is outside the scope of our remand order. See *People v Jones*, 394 Mich 434, 435; 231 NW2d 649 (1975).

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ James Robert Redford