# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DARRIUS LAVELLE BROWN,

Defendant-Appellant.

UNPUBLISHED
December 10, 2015

No. 322995
Muskegon Circuit Court
LC No. 13-063479-FC

Before: OWENS, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of assault with intent to commit murder, MCL 750.83; assault with intent to do great bodily harm less than murder, MCL 750.84(1)(a); possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f; and three counts of possession of a firearm during the commission of a felony (felony-firearm) (second offense), MCL 750.227b. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to 24 to 40 years' imprisonment for assault with intent to commit murder, to 20 to 40 years' imprisonment for assault with intent to do great bodily harm less than murder, to 3 to 15 years' imprisonment for felon-in-possession, and to five years' imprisonment for each of the three counts of felony-firearm. The sentences for assault with intent to commit murder, assault with intent to do great bodily harm less than murder, and felon-in-possession are concurrent with each other and consecutive to any parole sentence currently being served with MDOC. Defendant's felony-firearm sentences are consecutive to and preceding his sentences for assault with intent to commit murder, assault with intent to do great bodily harm less than murder, and felon-in-possession. Defendant appeals as of right. Because defendant was not denied the effective assistance of counsel and his scoring challenges to offense variable (OV) 3, OV 6 and prior record variable (PRV) 7 are without merit, we affirm.

According to the evidence introduced at trial, on May 20, 2013, defendant shot his girlfriend, Precious Buchanan, in the neck and back. The altercation occurred after defendant learned that Buchanan had visited the home of her ex-boyfriend's mother. Specifically, Buchanan and her sister, Daja Williams, arrived at defendant's home with their children after looking at some houses and visiting the woman in question, at which time defendant playfully carried Buchanan inside while Williams waited outside in the car with the children. Once inside, defendant's demeanor changed. He grew violent, he pushed Buchanan, and he eventually carried Buchanan upstairs to his bedroom, where he continued to "push [her] around." Williams heard

yelling, and she went inside to investigate. Shortly after Williams arrived in the bedroom, defendant pulled a gun from his pocket, Buchanan said to "run," and both Williams and Buchanan ran from the room, down the stairs, and out of the house. Defendant ran after the women, firing his gun multiple times, and he succeeded in shooting Buchanan in the neck and back. Williams ran to a nearby daycare, where she called a relative for help, and Buchanan drove herself to the hospital, where she was treated for her injuries. Defendant was convicted as noted above. He now appeals as of right.

On appeal, defendant challenges the scoring of OV 3 and OV 6, and he challenges the scoring of PRV 7. First, with respect to OV 3, which relates to physical injury to a victim, defendant contends that, because the bullets missed Buchanan's organs and major arteries, her injuries were neither life threatening nor permanently incapacitating, such that the trial court erred by scoring OV 3 at 25 points. Second, regarding OV 6, which relates to a defendant's intent to kill or injure a victim, defendant argues that he shot at Buchanan while in an emotional state caused by adequate provocation such that he did not have the requisite intent to merit a score of 25 points under OV 6. Third, relating to PRV 7, which concerns subsequent or concurrent felony convictions, defendant maintains that the trial court could not score this variable because PRV 7 cannot be scored for a mandatory consecutive sentence and, under MCL 768.7a(2), defendant was subject to mandatory consecutive sentencing given that he was on parole when the instance offenses were committed.

Although defendant preserved his challenges to the scoring of OV 3 and PRV 7, defendant did not raise his objections to the scoring of OV 6 at sentencing, in a motion for resentencing, or in a motion to remand. See *People v Loper*, 299 Mich App 451, 456; 830 NW2d 836 (2013), citing MCL 769.34(10). Therefore, the OV 6 issue is unpreserved, and our review is for plain error affecting defendant's substantial rights. See *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004).

"Determining whether a trial court properly scored sentencing variables is a two-step process." *People v Marshall*, 495 Mich 983; 843 NW2d 925 (2014). First, we review the trial court's factual determinations for clear error, which "must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "The clear error standard asks whether the appellate court is left with a definite and firm conviction that a mistake has been made." *Marshall*, 495 Mich at 983. Second, "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

MCL 777.33 governs the scoring of OV 3, which "is physical injury to a victim." When scoring OV 3, the trial court must score the highest number of points possible under the statute. *People v Houston*, 473 Mich 399, 407-408; 702 NW2d 530 (2005). If a victim suffered a "life threatening or permanent incapacitating injury," the trial court is directed to score 25 points under OV 3. MCL 777.33(1)(c).

Here, one of the victims was shot in the back of her neck and in the posterior chest (i.e., the upper back). Dr. Veronica Petty testified that the gunshot wound to the neck "fortunately only broke part of a certain portion of [the victim's] vertebra in the neck which didn't [a]ffect the

neural-tube, the cord, but causes pain to some degree some mild instability in the neck." Dr. Petty noted that, had the bullet struck a couple of centimeters more toward the center, Buchanan would have been paralyzed and she probably would have died. In addition, Buchanan had a second gunshot wound to the back, which missed the aorta by inches and fortunately missed the victim's lung. These injuries necessitated prompt medical attention to ensure that there was no active internal bleeding, a second CAT scan days later to ensure that there was no delayed internal bleeding, and Buchanan was required to wear a neck brace to prevent further damage to the vertebrae. Buchanan also underwent surgery months later to have the bullets removed from her body. While Buchanan's injuries certainly could have been more dire if the bullets had struck elsewhere, the fact remains that she suffered two gunshots wounds, one to the neck and one to the upper back. Given the nature and location of the injuries, we see no clear error in the trial court's conclusion that such obviously serious injuries constituted "life-threatening injury" within the meaning of OV 3. Further, because there was clear testimony that the victim suffered these injuries, this finding was supported by a preponderance of the evidence. *Hardy*, 494 Mich at 438. Therefore, the trial court did not err by assessing 25 points under OV 3. MCL 777.33(1)(c).

Next, MCL 777.36 governs the scoring of OV 6, which "is the offender's intent to kill or injure another individual." If the defendant "had unpremeditated intent to kill," OV 6 directs the trial court to score 25 points. MCL 777.36(1)(b). Pursuant to MCL 777.22(1), OV 6 should be scored for cases involving "homicide, attempted homicide, conspiracy or solicitation to commit a homicide, *or assault with intent to commit murder*." Further, the trial court is required to "score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

Here, the jury convicted defendant of assault with intent to murder. "The elements of assault with intent to commit murder are (1) an assault, (2) *with an actual intent to kill*, (3) which, if successful, would make the killing murder." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011) (quotation marks and citation omitted; emphasis added). Because the jury found defendant guilty of assault with intent to commit murder, its verdict necessarily established that defendant had an actual intent to kill. The trial court was required to score OV 6 consistent with the verdict. MCL 777.36(2)(a). Moreover, contrary to defendant's arguments on appeal, there was ample evidence supporting the finding that defendant had, at a minimum, an unpremeditated intent to kill Buchanan given that he repeatedly fired a gun at her as she fled, striking her in the neck and back. See *Jackson*, 292 Mich App at 588 ("The intent to kill may be proved by inference from any facts in evidence."). Therefore, the trial court did not erroneously score 25 points under OV 6. There was no plain error. See *Kimble*, 470 Mich at 312.

Next, MCL 777.57 governs the scoring of PRV 7, which "is subsequent or concurrent felony convictions." If the defendant "has 2 or more subsequent or concurrent convictions," PRV 7 directs the trial court to score 20 points. MCL 777.57(1)(a). However, MCL 777.57(2)(c) directs the trial court not to score "a concurrent felony conviction if a mandatory consecutive sentence . . . will result from that conviction." A trial court may also not score a felony-firearm conviction under PRV 7. MCL 777.57(2)(b).

In this case, aside from his felony-firearm convictions, defendant was convicted of assault with intent to commit murder, assault with intent to commit great bodily harm less than

murder, and felon-in-possession. However, because defendant committed the instant offenses while on parole, his sentences for these convictions were to run consecutively to his parole violation pursuant to MCL 768.7a(2). Given the imposition of consecutive sentencing incident to MCL 768.a(2), defendant claims he cannot be assessed points under PRV 7.

Defendant's argument is without merit given the plain language of MCL 777.57(2)(c). That is, under this provision, "a concurrent felony conviction" cannot be scored if a mandatory consecutive sentence "will result from that conviction." According to the dictionary, "result" is defined as "to proceed or arise as a consequence, effect, or conclusion." *Merriam-Webster's Collegiate Dictionary* (11th ed). Applying the plain language of the statute in defendant's case, although it is true that he is subject to mandatory consecutive sentencing, the consecutive sentencing arises as a consequence of his *parole violation* pursuant to MCL 768.7a(2), not as a result of his concurrent felony convictions. Because the mandatory consecutive sentencing did not "result from" his concurrent convictions, MCL 777.52(2)(c) is not applicable and defendant's concurrent convictions may be scored under PRV 7. Given that defendant has two concurrent convictions, the trial court properly scored defendant at 20 points under PRV 7. See MCL 777.57(1)(a).

Finally, defendant also argues on appeal that defense counsel was ineffective for failing to adequately investigate the victims' criminal histories and the possibility that they received leniency in exchange for their testimony, for failing to pursue a claim of self-defense, for failing to sufficiently cross-examine the victims about their arrests for assault charges and their assaultive conduct toward defendant on the day in question, and, more generally, for not having a trial strategy. Specifically, defendant contends on appeal that the women had assault charges in their criminal histories unrelated to the events at issue in this case and that, on the day in question, he shot at the women in self-defense after they attacked him using "claw-like weapons in the form of fake fingernails." Defendant maintains that counsel performed deficiently by failing to investigate and pursue this defense at trial, and that counsel's failure prejudiced defendant.

Defendant failed to move for a new trial or a *Ginther*[1] hearing, meaning that defendant's claim of ineffective assistance of counsel is unpreserved. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Because defendant failed to develop an evidentiary record in the trial court, our review is limited to mistakes apparent on the record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

To establish a claim of ineffective assistance of counsel, a defendant must show that: (1) "his attorney's performance fell below an objective standard of reasonableness," and (2) there is "a reasonable probability that the outcome [of trial] would have been different but for counsel's errors." *People v Grant*, 470 Mich 477, 485-486; 684 NW2d 686 (2004). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Further, the defendant bears the

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

burden of establishing the factual predicate of his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses, and a "substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation omitted). However, defense counsel also enjoys "great discretion in the trying of a case—especially with regard to trial strategy and tactics." *People v Pickens*, 446 Mich 298, 330; 521 NW2d 797 (1994). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy[.]" *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). This Court will not substitute its judgment for counsel on matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999).

In this case, defendant first contends that counsel's investigation failed to address the victims' criminal histories and the possibility that their "testimony was bartered" in exchange for leniency. Defendant also claims that counsel should have cross-examined the victims with respect to the issue of leniency. However, nothing in the record supports defendant's claim that counsel conducted an inadequate investigation, that the victims had been arrested on assault charges, or that they received leniency of any kind in exchange for their testimony. Consequently, defendant has failed to establish the factual predicate of his claim. See *Hoag*, 460 Mich at 6.

We note that defendant filed an untimely motion for a remand, which this Court denied, and that he impermissibly attempts to expand the record on appeal by attaching Internet Criminal History Access Tool (ICHAT) records to his brief on appeal to substantiate his claims regarding the victims' criminal histories. However, because these records are not part of the lower court record, they need not be considered. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008); *People v Watkins*, 247 Mich App 14, 31; 634 NW2d 370 (2001). Moreover, even considering these documents, there is still no evidence that either of the victims received leniency in exchange for their testimony against defendant. The documents merely show that the women pled *nolo contendere* to the charges at issue, and there is nothing indicative of leniency in exchange for their testimony against defendant. Therefore, the fact remains that defendant has not established that counsel's investigation of the victims was objectively unreasonable in this respect. See *Grant*, 470 Mich at 485-486.

Next, defendant argues that defense counsel was ineffective for failing to pursue a claim of self-defense, and to specifically cross-examine the victims regarding their "rapier-like" acrylic nails. As noted, the questioning of witnesses is presumed to be a matter of trial strategy, *Petri*, 279 Mich App at 413, and defendant has not overcome the presumption that counsel's decisions were a matter of trial strategy. Quite simply, the record does not indicate that a self-defense theory was viable in this case or that counsel was ineffective for failing to pursue such an unsubstantiated defense. Cf. *Chapo*, 283 Mich App at 371-372.

Relevant to defendant's claim of self-defense, an individual may employ deadly force if that individual is not engaged in the commission of crime, he or she has no duty to retreat, and the individual "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another

individual." MCL 780.972(1). See also *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014). Given that defendant used a gun and succeeded in shooting Buchanan as she fled, it is plain that defendant employed "deadly force." See *People v Hooper*, 152 Mich App 243, 247; 394 NW2d 27 (1986). Defendant now claims on appeal that his conduct was justified because the victims attacked him while wearing acrylic nails. In actuality, the record plainly shows that Buchanan was shot *in the back* as she and Williams fled. We see no basis on which defendant could honestly and reasonably have believed himself in imminent danger from fleeing, unarmed individuals. Further, in defendant's statements to the police, he never indicated that he acted in self-defense. In fact, defendant stated that "he shot the gun to scare the girls." In other words, there was no indication that defendant believed he was in imminent danger, and a self-defense theory was not applicable to the case. Thus, counsel was not objectively unreasonable for failing to pursue this defense. Cf. *Chapo*, 283 Mich App at 371-372.

Next, defendant more generally claims that counsel lacked a trial strategy. Defendant abandoned this claim by giving the issue cursory treatment and failing to explain or rationalize his position. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Moreover, our review of the record reveals that this claim is clearly without merit. At trial, counsel argued that defendant could not be convicted of anything in relation to Williams because she was out of the room before defendant fired his weapon. With respect to Buchanan, defense counsel's strategy was to argue that defendant lacked the intent to kill. Counsel also successfully requested M Crim JI 17.4, which addresses circumstances mitigating an unlawful assault, and counsel claimed that defendant was emotionally excited after learning that Buchanan had been at her ex-boyfriend's mother's house. In short, defense counsel had a strategy. While defendant now complains about counsel's performance on appeal, "a particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *Matuszak*, 263 Mich App at 61.

We note briefly that, even supposing counsel's performance fell below an objective standard of reasonableness, defendant has not shown prejudice. The evidence established that defendant shot at the unarmed victims as they fled, and he succeeded in striking Buchanan in the neck and back. In light of this substantial evidence supporting defendant's convictions, defendant has not shown that, but for counsel's errors, there was a reasonable probability of a different outcome. See *Grant*, 470 Mich at 486.

Affirmed.

/s/ Donald S. Owens
/s/ William B. Murphy
/s/ Joel P. Hoekstra

-6-