# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LAMAR LATIEFF WALKER II,

Defendant-Appellant.

UNPUBLISHED
February 4, 2016

No. 322810
Wayne Circuit Court
LC No. 13-006664-FC

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of second-degree murder, MCL 750.317, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and interfering with a police investigation, MCL 750.483a(3)(b). The trial court sentenced defendant to 25 to 40 years' imprisonment for the second-degree murder conviction, two years' imprisonment for the felony-firearm conviction, and 2 to 10 years' imprisonment for the interfering with a police investigation conviction. Because defendant was not denied the effective assistance of counsel and the evidence was sufficient to support his convictions, we affirm.

Defendant's convictions arise from the shooting death of defendant's uncle, Jeffrey Perry, in the early morning hours of July 5, 2013. Specifically, on July 4, 2013, Jeffrey and defendant attended a fireworks display with Briana Noland (Jeffrey's girlfriend), Noland's two small children, Chantel Tatum (defendant's girlfriend), and Terrell Perry (the victim's son). Defendant took an AK-47 automatic rifle with him to the show, planning to shoot it after the fireworks. Later that evening, they dropped Noland and her children at their home, and then continued driving in the white van that they had driven to the fireworks. A fight then ensued between Jeffrey and Terrell, after which Terrell was left on the side of the road. Defendant and Jeffrey then exchanged heated words, and defendant fired on Jeffrey at close range with the AK-47. Tatum, who was still in the van, witnessed the shooting. Terrell, who was still nearby, heard the shots and saw the van "lighting up" with gunfire. Defendant then pushed Jeffrey's body out of the van and ordered Terrell back inside. The van was later set on fire and left to burn. After the shooting, defendant left the state. He later confessed to Tony Wright, a friend of Jeffrey's, that he had shot Jeffrey, but defendant claimed he had done so to protect Terrell. Defendant was arrested when he returned to Michigan and, in a statement to police, he denied any involvement with the shooting.

-1-

Following a bench trial, defendant was convicted of second-degree murder, felony-firearm, and interfering with a police investigation.[1] The trial court sentenced defendant as noted above. Defendant now appeals as of right.

On appeal, defendant argues that he was deprived of his constitutional right to the effective assistance of counsel. Specifically, defendant argues that he was deprived of the effective assistance of counsel when (1) defense counsel convinced defendant to waive his right to a jury trial by representing to defendant that counsel's friendship with the judge would allow him to influence the outcome of defendant's trial, (2) defense counsel coerced defendant into waiving his right to testify, and (3) defense counsel failed to file a timely motion to suppress the firearm used during the commission of the crimes.

Defendant failed to preserve this issue by bringing a timely motion for a new trial or requesting a *Ginther*[2] hearing in the lower court. See *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). This Court's review of unpreserved ineffective assistance of counsel claims is limited to mistakes apparent on the record. *Id.* To establish ineffective assistance, the defendant must show that "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citations omitted). Effective assistance of counsel is presumed and a defendant bears a heavy burden of proving otherwise. *Petri*, 279 Mich App at 410. Defendant also bears the burden of establishing the factual predicate of his claim. *Douglas*, 496 Mich at 592. "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *Petri*, 279 Mich App at 411.

Defendant first claims that counsel imprudently advised defendant to waive his right to a jury trial by unethically informing defendant that counsel had a personal friendship with the trial judge, which would allow counsel to engage in ex parte communications with the trial judge and thus influence the court's decision. Defendant's claim in this regard is directly contradicted by defendant's sworn statements in the lower court record, meaning that defendant has failed to establish the factual predicate of his claim. In particular, a criminal defendant has a constitutionally guaranteed right to a jury trial. US Const, Am VI; Const 1963, art 1, § 20. However, with the consent of the prosecutor and the approval of the trial court, a defendant may waive his right to a jury trial. MCL 763.3; MCR 6.401. In order for a jury trial waiver to be valid, it must be both knowingly and voluntarily made. MCR 6.402(B); *People v Godbold*, 230 Mich App 508, 512; 585 NW2d 13 (1998). Counsel's decision to recommend a jury or bench trial is within the purview of trial strategy. *People v Davenport (After Remand)*, 286 Mich App 191, 197; 779 NW2d 257 (2009). Further, while defense counsel may offer advice, it is the

---

[1] The trial court found defendant not guilty of first-degree premeditated murder, first-degree felony-murder, carjacking, and obstruction of justice.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defendant that possesses the ultimate authority to decide whether to waive a jury trial. *Jones v Barnes*, 463 US 745, 751; 103 S Ct 3308; 77 L Ed 2d 987 (1983).

In this case, the lower court record plainly establishes that defendant voluntarily and knowingly waived his right to a jury trial without any promises or threats of any kind and without any suggestion that the trial court would provide defendant with leniency. In particular, the trial court placed defendant under oath, advised defendant of his right to a jury trial, and obtained defendant's waiver of that right. Before accepting defendant's waiver, the trial court specifically questioned defendant as follows:

> *The Court*. Has anybody promised you anything or threatened you or twisted your arm in any way to get you to give up your rights to a jury trial and have a waiver trial?
>
> *The Defendant*. No, sir.
>
> *The Court*. Has anybody suggested to you that I'd give you a break if you did that?
>
> *The Defendant*. No, sir.

Plainly, the record wholly belies defendant's claim that he waived his right to a jury trial because counsel promised to speak with the judge on his behalf. Having failed to establish the factual predicate of his claim, defendant has not shown that he was denied the effective assistance of counsel on this basis. See *Douglas*, 496 Mich at 592.

We note that defendant filed an untimely motion for a remand in this Court, which was denied, and that he impermissibly attempts to expand the record on appeal by attaching his own affidavit to his appellate brief. See MCR 7.210(A)(1). In this affidavit, defendant avers that he waived his right to a jury trial based on counsel's promises to speak with the trial judge, as a friend, about the case "over lunch or dinner." However, because defendant's affidavit is not part of the lower court record, it need not be considered. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008); *People v Watkins*, 247 Mich App 14, 31; 634 NW2d 370 (2001). Moreover, even if we were to consider the document, we would still reject defendant's ineffective assistance claim. Quite simply, defendant cannot establish the factual predicate of his claim through the presentation of a self-serving affidavit contradicting his own sworn statements before the trial court. See *People v Armisted*, 295 Mich App 32, 49; 811 NW2d 47 (2011); see also *People v White*, 307 Mich App 425, 429-431; 862 NW2d 1 (2014). Given defendant's unequivocal sworn statements on the record, we cannot conclude that counsel was ineffective. Cf. *Armisted*, 295 Mich App at 49.

For similar reasons, defendant has failed to show that he was deprived of the effective assistance of counsel when defense counsel "coerced" him into waiving his right to testify at trial. A criminal defendant has a constitutional right to testify at trial. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). "Although counsel must advise defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *Id.* "[I]f defendant . . . decides not to testify or acquiesces in his attorney's decision that he not

testify, the right [to testify] will be deemed waived." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985) (quotation marks and citation omitted).

Defendant argues that defense counsel was constitutionally ineffective because he "interfered" with defendant's right to testify. However, the record reveals that defendant voluntarily waived his right to testify after specific questioning by the trial judge. Additionally, defense counsel explained to the trial judge that he had "discussed with [defendant] his right to testify or not to testify" and ensured that defendant was "fully cognizant of it." There is no evidence on the record that defense counsel "coerced" defendant.[3] Instead, the ultimate decision whether or not to testify was left to defendant, and defendant voluntarily and knowingly made the decision not to testify before the judge. Given this record, defendant cannot now claim that defense counsel was ineffective for advising him not to take the stand.

Next, defendant has also failed to show that defense counsel's failure to file a motion to suppress the murder weapon, an AK-47, deprived him of effective assistance. In particular, defendant argues that the AK-47 should have been suppressed because the police obtained the gun without a warrant from Tony Wright, a private citizen who, according to defendant, was working as an agent of the Detroit Police Department when he obtained the gun. Defendant asserts that Wright's knowledge of the gun's location arose from conversations with defendant in jail which were undertaken at the behest of the police, after defendant's right to counsel had attached, such that the conversations and the gun had to be suppressed. Defense counsel successfully objected at trial to the introduction of Wright's testimony regarding a jailhouse conversation with defendant.[4] However, counsel did not object to admission of the AK-47 evidence.

Counsel's decision to object to the admission of evidence is presumed to be a matter of trial strategy, and defendant has not overcome this presumption. See *Petri*, 279 Mich App at 412. On the record before us, counsel could have reasonably concluded that an objection to the introduction of the gun evidence was unnecessary because defendant did not dispute that he shot

---

[3] On appeal, in the affidavit submitted by defendant, defendant claims that, "when I told [defense counsel] I wanted to testify, he went crazy, telling me that if I wanted to get on the stand that it was a dumb choice to make and that I was messing up what he was doing." Additionally, defendant claims defense counsel told him to find a new lawyer if defendant did not like the option of staying mute. As previously noted, defendant's affidavit is an improper expansion of the record, which we need not consider. See *Horn*, 279 Mich App at 38; *Watkins*, 247 Mich App at 31. Further, defendant's affidavit establishes only that defense counsel advised him that it would be "dumb" to take the stand. Defense counsel's advice illustrated a strategic decision and defendant was provided with the opportunity to disregard counsel's advice. In short, given defendant's knowing and voluntary waiver before the trial court, defendant cannot now claim that he received ineffective assistance on this basis. See *Armisted*, 295 Mich App at 49; see also *White*, 307 Mich App at 429-431.

[4] We offer no opinion on the propriety of the trial court's decision to suppress this evidence or whether an objection to the AK-47 evidence would have succeeded.

Jeffrey with an AK-47 and instead defense counsel argued a self-defense theory. Moreover, even assuming for the sake of argument that there was some error by counsel, defendant has not shown a reasonable probability that counsel's failure to seek suppression of the murder weapon affected the outcome of the proceedings given that the evidence of his involvement was overwhelming. Indeed, defendant admitted to shooting Jeffrey and claimed only that he had done so in self-defense.

With regard to his claims of ineffective assistance, defendant finally asserts that trial counsel's "repeated errors, omissions and general actions," "when taken as a whole," were egregious enough to constitute ineffective assistance. It is true that the cumulative effect of several errors can warrant reversal where any one error would not. *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). However, only actual errors are aggregated when making this determination. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995). For the reasons stated above, this is not a case involving multiple errors by defense counsel. Therefore, defendant's ineffective assistance claim must fail.

Next, defendant argues that there was insufficient evidence to support his second-degree murder and felony-firearm convictions because the prosecutor failed to adequately rebut defendant's self-defense theory.[5]

This Court reviews challenges to the sufficiency of evidence de novo following a bench trial. *People v Lanzo Const Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found each element of the charged crimes proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "Circumstantial evidence and reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). This Court resolves conflicts in the evidence in favor of the prosecution and will not interfere with the trier of fact's determinations regarding the weight of evidence and the credibility of the witnesses. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008).

"Murder is a common-law offense, defined as the unlawful killing of one human being by another with malice aforethought." *People v Goecke*, 457 Mich 442, 463; 579 NW2d 868 (1998). Second-degree murder encompasses all kinds of murder not rising to the level of first-degree murder. See MCL 750.316; MCL 750.317. Specifically, the elements of second-degree murder are (1) death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification, excuse, or mitigation. *People v Bailey*, 451 Mich 657, 669; 549 NW2d 325 (1996). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, 457 Mich at 443. For a conviction of felony-firearm, the prosecution must show that defendant possessed a firearm during the commission of

---

[5] On appeal, defendant expressly states that he is not contesting the sufficiency of the evidence supporting his conviction for interference with a police investigation. Thus, we focus on defendant's second-degree murder and felony-firearm convictions.

a felony or the attempt to commit a felony. MCL 750.227b; *People v Akins*, 259 Mich App 545, 554; 675 NW2d 863 (2003).

Defendant does not dispute that the prosecutor provided sufficient evidence to prove that defendant possessed a gun and shot the victim with malice, causing his death. However, defendant argues that the prosecutor failed to rebut defendant's claim of self-defense beyond a reasonable doubt. Under MCL 780.972:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . .

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Thus, the use of deadly force in self-defense is justified when (1) the defendant honestly and reasonably believed that he was in danger, (2) the danger which the defendant feared was serious bodily harm or death, and (3) the action taken by the defendant appeared at the time to be immediately necessary. MCL 780.972(1)(a). "Once a defendant raises the issue of self-defense and satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt." *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014) (citation and quotation marks omitted).

Here, defendant claims that he reasonably believed his life was in danger because there was evidence that, before defendant fired his weapon, Jeffrey reached under the driver's seat and defendant could have reasonably believed that Jeffrey was reaching for a gun. Contrary to this assertion, although there was evidence that Jeffrey reached under the seat, Tatum also testified that Jeffrey had "straighten[ed] back up *before* he was shot." And, in any event, there was no evidence to suggest that defendant would have reason to believe that Jeffrey might have had a gun or any other weapon under his seat. Tatum, Terrell, and Noland all testified that they had not seen the victim with a gun, or any other weapon, on the night of the incident. The victim's daughter testified that she had never seen her father with a gun, and Terrell did not think that his father owned any firearms. Wright, who had known the victim for years, said he knew the victim owned one gun, but that he had only ever seen the victim carry it a few times, and no one suggested that Jeffrey had ever stored a gun, or other weapon, under the seat of his car. This record does not support the assertion that defendant honestly and reasonably believed that Jeffrey reached under the seat for a gun, or other weapon, such that the use of deadly force was necessary.

Moreover, Tatum testified that defendant shot the victim once, after which there was "a pause" and Jeffrey then attempted to escape from the van. Only after this pause, and while Jeffrey was trying to escape unarmed, did defendant continue to shoot and ultimately kill Jeffrey. Given this evidence, the trial court could reasonably conclude that shooting Jeffrey an additional eight times as he attempted to flee was unnecessary to prevent defendant's imminent death or

harm. Indeed, the trial judge specifically credited Tatum's testimony on this point, and ruled out self-defense after considering all of the evidence presented, including medical testimony. The trial court stated:

> One could argue on the defendant's behalf that when the victim went under the seat, the defendant might have though [sic] the victim was going for a gun even if it was a mistake on his part, even if there ultimately was no gun. But the defendant would've know [sic] that there was no gun actually certainly shortly after the first shot was fired.

> And even though such a state of mind might explain the first shot, it wouldn't explain the second through the ninth shots because at that point by accounts of [Tatum], and it's a [sic] frankly well confirmed by the medical examiner's anatomical drawing, the victim was turned around. All the shots hit the right side of the victim's body in one place or another. And that's consistent with [the victim] being turned around trying to get out of the vehicle, and turned with his right side facing the shooter.

> And, of course, as he's trying to get out of the vehicle, the shooter would obviously see that he was not armed or that -- and, and with the victim trying to essentially escape at that point, he would've had no justifiable reason under self-defense theory to fire offer [sic] the other eight shots that were fired off. So I can rule out self-defense easily.

In sum, viewed in a light most favorable to the prosecution, sufficient evidence existed to disprove defendant's claim of self-defense beyond a reasonable doubt. Consequently, defendant's challenge to the sufficiency of the evidence supporting his convictions is without merit.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto