# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 24, 2018

Plaintiff-Appellee,

v

No. 336036
Oakland Circuit Court

ANTON DEQUNTA BROOKS,

LC No. 2016-258196-FC

Defendant-Appellant.

Before: CAVANAGH, P.J., and STEPHENS and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of assault with intent to do great bodily harm, MCL 750.84, armed robbery, MCL 750.529, felon in possession of a firearm, MCL 750.224f, and three counts of possession of a firearm in the commission of a felony, MCL 750.227b. We affirm.

In February 2016, Sara Gatzmeier went with her friend and neighbor, Ronald Day, to find a used vehicle for her to purchase. Day drove to a house where defendant was located and defendant got into the vehicle, sitting in the rear passenger seat behind Gatzmeier. Gatzmeier had seen defendant with Day on five or more previous occasions. After Day began driving, defendant immediately attacked Gatzmeier with a handgun and yelled at her to give him her money. Gatzmeier gave defendant her purse and tried to open the passenger door to escape the vehicle at which time defendant fired two or three shots. One bullet struck an area near Gatzmeier's head and damaged the neck and collar area of her coat. The second bullet struck her left elbow. Gatzmeier was able to jump from the moving vehicle and ran. Gatzmeier received help from a stranger and the police were called. She was taken to the hospital for treatment of the gunshot wound and later required surgery. Day was arrested on the same day and defendant was arrested the following day, after Gatzmeier identified him in a photographic lineup as her attacker.

## I. PROBABLE CAUSE FOR ARREST AND SUPPRESSION OF EVIDENCE

Defendant argues that his arrest was illegal because police lacked a warrant or probable cause at the time of the arrest; consequently, evidence obtained as the result of his arrest should have been suppressed. We disagree.

-1-

To preserve an issue of an illegal arrest, it must be raised before the trial court. *People v Van Sickle*, 116 Mich App 632, 637; 323 NW2d 314 (1982). A motion to suppress must also be raised before the trial court. *People v Gentner, Inc*, 262 Mich App 363, 368; 686 NW2d 752 (2004) (citation omitted). Because these issues are raised for the first time on appeal, our review is for plain error affecting defendant's substantial rights. See *People v Borgne*, 483 Mich 178, 196-197; 768 NW2d 290, reh gtd in part on other grounds 485 Mich 868 (2009).

The United States Constitution and Michigan Constitution guarantee the right against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The Michigan Constitution is generally construed to provide protection commensurate with the federal constitution in this regard. *People v Chowdhury*, 285 Mich App 509, 516; 775 NW2d 845 (2009). Whether a search or seizure is reasonable depends on the circumstances of each case. *People v Brzezinski*, 243 Mich App 431, 433; 622 NW2d 528 (2000). "To lawfully arrest a person without a warrant, a police officer must possess information demonstrating probable cause to believe that an offense has occurred and that the defendant committed it." *People v Reese*, 281 Mich App 290, 294-295; 761 NW2d 405 (2008). If a police officer has received information, from "an authoritative source," that a warrant exists for a person's arrest, the officer may arrest that person without that warrant in his possession. MCL 764.15(1)(e); MCL 764.18. In addition, a police officer may arrest a person without a warrant if "[t]he person has committed a felony although not in the [police officer's] presence" or "[a] felony in fact has been committed and the [police] officer has reasonable cause to believe the person committed it." MCL 764.15(1)(b), (c). "Probable cause is found when the facts and circumstances within an officer's knowledge are sufficient to warrant a reasonable person to believe that an offense had been or is being committed." *People v Chapo*, 283 Mich App 360, 367; 770 NW2d 68 (2009) (citation omitted). As a general rule, evidence that is seized or procured in violation of the Fourth Amendment is inadmissible as evidence against a defendant. *People v Lyon*, 227 Mich App 599, 611; 577 NW2d 124 (1998).

Initially, defendant's allegations fail to support his contention of an illegal arrest. Defendant states, in his standard 4 brief: "[W]hen Officer [Eric] Hicks arrested [defendant] he did not have a warrant and did not have any facts upon which to believe that [defendant] committed, was committing, or about to commit an offense. He was simply told over the phone by Sgt. Armstrong that the Detective Bureau wanted [defendant] and he was asked to make an arrest." Based on defendant's assertions, the actions of Hicks in effectuating defendant's arrest were legitimate in accordance with MCL 764.15(1)(b), (c) and (e). Having received instructions from the detective bureau regarding the need to effectuate defendant's arrest and the existence of information pertaining to the assault involving Gatzmeier and the arrest of Day that occurred the previous day, Hicks had probable cause to make the arrest. See *Chapo*, 283 Mich App at 367.

Specifically, at the time of defendant's arrest, Gatzmeier had been interviewed by police regarding the events and Day had been arrested. While Day initially misidentified his accomplice, police quickly eliminated as a suspect the false lead provided by Day and verified their determination by Gatzmeier's failure to identify that individual in a photographic lineup. Day identified defendant as being involved in the events within 24 hours of Day's arrest. Gatzmeier confirmed defendant's identity as the perpetrator by selecting defendant's photograph from an array presented by police. Contrary to defendant's rendition of events, defendant's arrest was effectuated on February 26, 2016, at about 2:40 p.m. Gatzmeier's photographic

identification of defendant occurred on February 26, 2016, at about 1:00 p.m. Based on the facts and information available to Hicks at the time of defendant's arrest, defendant's claim regarding the illegality of his arrest lacks merit.

Because defendant's arrest was proper, his claim that evidence obtained as the result of his arrest should have been suppressed is equally without merit or a legal basis. See *People v Hawkins*, 468 Mich 488, 498-499; 668 NW2d 602 (2003). More particularly, there was no basis to suppress the money taken from defendant incident to his lawful arrest. "A search of a person incident to an arrest requires no additional justification." *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). And, here, during the armed robbery, cash was taken from Gatzmeier and identified as being of certain denominations. Thus, confiscation of the money in defendant's possession was justified and relevant to the reason for his arrest.

Defendant also offers a relatively convoluted and inexplicable rationale to suggest that Day's testimony should have been suppressed. Defendant asserts that Day's identification of defendant occurred after defendant's arrest and that based on the police interrogation of defendant, further information was obtained from Day implicating defendant in the armed robbery and assault. Defendant further asserts that all of Day's testimony was tainted as a result and should have been suppressed at trial. There is no record evidence to support defendant's version of the events or how they transpired, and defendant fails to provide any indication or citation to the record for the support of his allegations. See MCR 7.212(6). Defendant suggests that his information was obtained from police reports, but they were not admitted into evidence and, thus, constitute an improper expansion of the lower court record. See *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999); see also MCR 7.210(1). In any case, because defendant's arrest was not improper, there exists no basis to suppress any evidence obtained as a result of that arrest.

## II. PROSECUTORIAL MISCONDUCT

Defendant contends the prosecutor engaged in misconduct when questioning Day and eliciting testimony about Day's sentencing agreement which implied that his testimony was "truthful," and served to improperly bolster Day's credibility. We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because defendant neither objected nor requested a curative instruction, our review is for plain error. See *id.* at 475-476.

As explained by our Supreme Court in *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995):

> Included in the list of improper prosecutorial commentary or questioning is the maxim that the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness. While this is generally improper, the simple
>
> > reference to a plea agreement containing a promise of truthfulness is in itself [not] grounds for reversal. A more accurate statement of

the law appears to be that, although such agreements should be admitted with great caution, admissibility of such an agreement is not necessarily error unless it is used by the prosecution to suggest that the government had some special knowledge, not known to the jury, that the witness was testifying truthfully.

Generally, "[b]y calling a witness who testifies pursuant to an agreement requiring him to testify truthfully, the Government does not insinuate possession of information not heard by the jury and the prosecutor cannot be taken as having expressed his personal opinion on a witness' veracity." [Citations and footnotes omitted.]

Defendant misrepresents the content of the exchange between Day and the prosecutor. The prosecutor elicited testimony from Day verifying that Day had entered into a sentencing agreement with the trial court in exchange for his "truthful" testimony at defendant's trial. The prosecutor never implied that Day's testimony in defendant's trial was truthful and specifically stated that a determination regarding the veracity of Day's testimony, for purposes of the sentencing agreement, was solely in the purview of the trial judge. At the time of Day's testimony, he had not yet even received the sentencing agreement from the trial court. The prosecutor never suggested any special knowledge regarding Day's veracity. Thus, the premise underlying defendant's allegations on this issue are not consistent with the actual facts. Further, the trial court instructed the jury that a determination of witness credibility was their responsibility, thereby alleviating any potential error because it is presumed that jurors follow their instructions. *People v Stevens*, 498 Mich 162, 177; 869 NW2d 233 (2015).

## III.  JURY ACCESS TO EVIDENCE

Defendant asserts that the trial court committed reversible error by permitting the jury to have access to the monies confiscated from Day and defendant in the jury room for their deliberations when the monies were not actually admitted into evidence. We disagree. Because defendant did not make this objection in the trial court, our review is for plain error affecting substantial rights, i.e., error that affected the outcome of the proceeding. See *People v Watkins*, 247 Mich App 14, 28; 634 NW2d 370 (2001), aff'd 468 Mich 233 (2003).

It is typically construed as error for a trial court to permit a deliberating jury to bring into the jury room any material that was not admitted into evidence. *People v Benberry*, 24 Mich App 188, 191; 180 NW2d 391 (1970). "A trial court is not to provide the jury with unadmitted evidence." *People v Davis*, 216 Mich App 47, 57; 549 NW2d 1 (1996).

At trial, Gatzmeier testified regarding the various denominations of cash that were taken from her during the armed robbery. Sergeant Eric Hicks of the Oakland County Sheriff's Department verified that monies were confiscated from Day at the time of his arrest, with Day confirming that defendant had given Day some of the monies obtained from the robbery. Detective Maurice Martin of the Oakland County Sheriff's Department testified to the specific denominations confiscated from Day and defendant following their arrests. In addition, Robert Koteles, Jr., a latent print analyst with the Oakland County Sheriff's Department, tested the confiscated monies but testified that he was unable to procure any prints of a comparable value.

While marked as exhibits 14 and 15 at trial, the monies were not formally admitted into evidence.

It appears that the failure to formally admit the monies into evidence was a procedural oversight, particularly given the absence of any objections to the designation of the monies as prosecution exhibits and the testimony elicited regarding this evidence. The testimony elicited from various witnesses and the information available to the jury regarding the amounts of the confiscated monies serves to render the presentation and availability of the monies to the jury merely cumulative or duplicative of the evidence available.

But even if this amounted to plain error, such error was not outcome-determination. See *Watkins*, 247 Mich App at 28. Martin acknowledged that the confiscated monies could not be specifically traced or asserted to be the actual denominations taken by defendant from Gatzmeier. Forensic examination of the monies did not reveal any latent prints to verify that the confiscated monies had been in the possession of Gatzmeier. Thus, the relative importance of the confiscated money is presumed to be minimal in the jury's determination of a verdict considering the strength of the other evidence against defendant.

## IV. INSTRUCTIONAL ERROR

Defendant contends the trial court erred in failing to provide the jury with specific instructions pertaining to accomplice testimony. He also challenges as error the trial court's provision of a flight instruction to the jury. However, these challenges to the jury instructions are deemed waived because defense counsel expressly indicated satisfaction with the jury instructions. See *People v Matuszak*, 263 Mich App 42, 57; 687 NW2d 342 (2004).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant asserts a multitude of failures by his trial counsel in support of his ineffective assistance claim, none of which have merit. Specifically, defendant contends that his trial counsel was ineffective for failing: (a) to object to testimony elicited suggesting defendant's involvement in the intimidation of various trial witnesses, (b) to request a jury instruction on accomplice testimony, (c) to object to testimony elicited from Day by the prosecutor pertaining to the sentence Day was to receive in exchange for his trial testimony, (d) to object to the provision of an unjustified flight instruction to the jury, (e) to object to defendant's illegal arrest and to request the suppression of evidence incident to that arrest, and (f) to object to or prevent the jury from having access to the confiscated monies, which were not admitted into evidence, in the jury room during the deliberations.

"[A] defendant must move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant has twice submitted motions to this Court seeking a remand for an evidentiary hearing to address his various claims of ineffective

-5-

assistance of counsel and both motions were denied.[1]  Thus, the issue is unpreserved and our review is for errors apparent on the record.  *Id.*

To establish a claim of ineffective assistance of counsel, a defendant must show both that his counsel's performance was objectively unreasonable in light of prevailing professional norms, and that defendant was prejudiced as a result of his counsel's inadequate performance.  *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014).  A defendant is prejudiced if there is a reasonable probability that, but for his counsel's performance, the proceedings would have rendered a different result.  *People v Gaines*, 306 Mich App 289, 300; 856 NW2d 222 (2014).

The defendant bears a heavy burden to show that the assistance afforded him was ineffective.  *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012).  Part of this burden is establishing a factual predicate for the claim.  *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).  There is a strong presumption that counsel's performance was effective and the result of trial strategy.  *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).  We "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence."  *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

Defendant first contends defense counsel was ineffective for failing to object to references pertaining to attempts at witness intimidation at trial.  Initially, we note that several discussions or references to the attempted witness intimidation occurred before trial or while the jury was not present.  At each occurrence, defense counsel asserted that defendant denied any involvement in these incidents.  Twice during trial, in abbreviated exchanges, Gatzmeier and Day's fiancée, Donella Donahue, asserted they had been contacted by telephone or through social media by individuals associated with defendant in an attempt to dissuade them from testifying at defendant's trial.  Donahue did not accuse or infer that the contacts she received were initiated by defendant or anyone associated with him.  Gatzmeier briefly indicated that the calls she received were from individuals known to be associated with defendant.  There was nothing improper in the elicitation of this brief testimony by the prosecutor as the information was relevant to witness credibility.  See *People v Mills*, 450 Mich 61, 72; 537 NW2d 909, mod 450 Mich 1212 (1995).  Evidence of threats against a witness could be useful to a jury in their evaluation of the credibility of that witness.  M Crim JI 3.6 (witness credibility).  Further, given the brief nature of the references and the failure of the witnesses to directly implicate defendant in the intimidation incidents, defense counsel's decision not to object and call further attention to the testimony constituted sound trial strategy.  See *Payne*, 285 Mich App at 190.

With regard to the failure of defense counsel to request jury instructions pertaining to accomplice testimony, this also was a matter of trial strategy.  The evidence against defendant was overwhelming given the admissions of Day and the definitive identification of defendant by Gatzmeier.  At trial, defense counsel elected as trial strategy to discredit the witnesses through

---

[1] *People v Brooks*, unpublished order of the Court of Appeals, entered July 25, 2017 (Docket No. 336036); *People v Brooks*, unpublished order of the Court of Appeals, entered May 10, 2017 (Docket No. 336036).

cross-examination and assert defendant's denial of involvement in the criminal acts. As such, a request by defense counsel to provide an accomplice instruction would have been contrary to defendant's theory at trial and could have been interpreted or viewed by the jury as an implicit admission that defendant engaged in the criminal acts with Day as his accomplice. Under the circumstances, defense counsel's trial strategy was not objectively unreasonable. See *Walker*, 497 Mich at 895. "That the strategy [defense counsel] chose ultimately failed does not constitute ineffective assistance of counsel." *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

Defendant also argues that trial counsel was ineffective for failing to object to the confiscated monies which were not admitted as evidence but allowed to be taken into the jury room during deliberations. As discussed above, the failure to technically follow correct procedure to admit the evidence, which received exhibit labels from the prosecutor and was the subject of elicited testimony from more than one witness did not constitute ineffective assistance of counsel or result in any prejudice to defendant. Testimony regarding the confiscated monies was detailed regarding the denominations and amounts, rendering the physical evidence merely duplicative. Further, defense counsel clarified through cross-examination that the confiscated monies could not be definitively tied to the monies taken from Gatzmeier. Once again, defense counsel may have elected, as a matter of trial strategy, not to object to the evidence in order to minimize its importance or significance. Further, there is no reasonable probability that permitting the jury to have this physical evidence in the jury room during deliberations affected the outcome of defendant's trial given the significant and definitive testimony identifying defendant as the perpetrator. See *Gaines*, 306 Mich App at 300.

Defendant also asserts that trial counsel was ineffective for failing to object to testimony elicited by the prosecutor regarding Day's sentencing agreement and for not objecting to the provision of a flight instruction to the jury. As noted, the prosecutor did not engage in misconduct by questioning Day regarding his sentencing agreement with the trial court. See *Bahoda*, 448 Mich at 276. Provision of the flight instruction to the jury was also permissible because there was evidence that defendant fled the crime scene and later exchanged vehicles because of his involvement in the shooting. See *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). Because admission of the challenged testimony and the provision of the instruction did not constitute error, defendant's contention that trial counsel was ineffective with regard to these matters lacks merit.

Defendant also contends that his trial counsel was ineffective because he failed to challenge defendant's alleged illegal arrest and to seek suppression of the evidence obtained from this arrest. But, as discussed above, defendant's arrest was proper and there was no basis to seek suppression of the evidence obtained as a result of his arrest. Counsel is not deemed ineffective for failing to raise a meritless or futile objection. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015).

VI. OFFENSE VARIABLES 3, 14, AND 19

At sentencing, defendant challenged the assessment of points for offense variables (OVs) 3, 8, 14, and 19. On appeal, however, defendant challenges only the points assigned on OVs 3,

14 and 19, asserting that the requisite reduction of the points assigned to these offense variables necessitates his resentencing.[2] We disagree.

" 'Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence.' However, we review de novo whether the facts found by the trial court are adequate to satisfy the trial court's scoring decision." *People v Rhodes*, 305 Mich App 85, 88; 849 NW2d 417 (2014), quoting *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

Offense variable 3 addresses "physical injury to a victim," and provides that 25 points are assigned for a "[l]ife threatening or permanent incapacitating injury" to a victim and 10 points are assigned for "bodily injury requiring medical treatment" to a victim. MCL 777.33(1)(c). It is undisputed that Gatzmeier was shot during this armed robbery and received immediate treatment at a local hospital. The treating physician indicated a risk of infection from the injury and Gatzmeier testified that she subsequently required surgery but continued to experience problems. Because MCL 777.33(1) required the trial court to assign "the highest number of points," the assessment of 25 points for this variable was not in error.

Defendant also challenges the assessment of 10 points for OV 14, asserting that no points should be attributed. MCL 777.44(1) governs the offender's role, directing that 10 points are to be assigned when "[t]he offender was a leader in a multiple offender situation." "The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a).

In support of his position, defendant relies on Day's admission that he conceived the plan to rob Gatzmeier and enlisted defendant's help, thereby rendering Day to be the leader in the criminal enterprise. In rejecting defendant's position and assigning 10 points to this offense variable, the trial court explained that defendant's election "to bring a firearm" and "use it" rendered him to be the leader in the criminal enterprise by escalating the danger and asserting control. Exclusive possession of a gun is some evidence of leadership. See *Rhodes*, 305 Mich App at 90. And, as the trial court held, there were other indicia of leadership. Day testified that the intention was to rob Gatzmeier, but that he was surprised when defendant used a weapon to physically assault Gatzmeier. Defendant engaged in the intimidation of Gatzmeier by yelling at her, striking her in the head with his gun, and demanding that she hand over her money. And at his rendezvous with Day after the robbery, defendant retained control of the majority of the monies stolen and dispensed monies to Day. While Day may have precipitated the initiation of the events, it was defendant who controlled what occurred and escalated the incident, thus justifying the trial court's assessment of 10 points for leadership for OV 14.

Finally, defendant challenges the assessment of 10 points for OV 19, which pertains to the offender's interference or attempted interference with the administration of justice. See MCL 777.49(c). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for

---

[2] Defendant asserts error in the assessment of points for OV 8 in his statement of issues presented, but fails to identify or elaborate on any such error in the body of his brief. Thus, any allegation of error in this regard has been abandoned. See *Payne*, 285 Mich App at 195.

-8-

purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016).

"In assessing points under OV 19, a court may consider the offender's conduct after the completion of the sentencing offense." *People v Smith*, 318 Mich App 281, 285; 897 NW2d 743 (2016). As the prosecutor argued, defendant returned Lee Pondexter's vehicle, parking it behind another vehicle in the driveway of Pondexter's residence. Defendant then picked Pondexter up from school in defendant's vehicle, which Pondexter did not expect. The weapon used in the robbery and assault was never recovered. Issues pertaining to witness intimidation arose before and during trial. At pretrial, the prosecutor noted that Gatzmeier had received threats to dissuade her from testifying at trial. During trial, Gatzmeier testified that she had been contacted by people, definitively associated with defendant, in an effort to influence her not to testify. During trial, the prosecutor again identified and reported to the trial court efforts at witness intimidation. Donahue testified that she also received telephone calls and was contacted on social media by individuals referring to her as a "snitch," in an effort to affect her willingness to testify at trial.

As recognized by this Court:

Decisions of both this Court and our Supreme Court have held the following conduct to constitute an interference or attempted interference with the administration of justice: providing a false name to the police, threatening or intimidating a victim or witness, telling a victim or witness not to disclose the defendant's conduct, fleeing from police contrary to an order to freeze, attempting to deceive the police during an investigation, interfering with the efforts of store personnel to prevent a thief from leaving the premises without paying for store property, and committing perjury in a court proceeding. Each of these acts hampers, hinders, or obstructs the process of administering judgment of individuals or causes by judicial process. For instance, the acts of witness intimidation and deceiving police investigators seek to prevent incriminating evidence from being used throughout the process of administering judgment of individuals by judicial process, including during the pretrial and, potentially, trial stages. [*Hershey*, 303 Mich App at 343-344 (citations omitted).]

The manner by which defendant returned the vehicle used in the robbery to Pondexter was consistent with an effort to avoid detection of how the vehicle was used and the damage resulting from defendant firing his gun inside the vehicle. Defendant also disposed of the gun he used so he could not be linked to the crime. Before and throughout trial, issues arose regarding witness intimidation undertaken by individuals identified as being associated with defendant. While defendant was not accused of personally engaging in the intimidation of witnesses, it is logical that the acts engaged in were performed at defendant's behest or with his implicit concurrence. No one, other than defendant, would benefit if the efforts at intimidating various witnesses were successful. In addition, in the presentence investigation report (PSIR), it was noted that defendant gave police alternative explanations for having "nearly the same amount and denominations on his person as the victim claimed she had stolen, he gave two different

stories." A defendant's "fabrications" have been construed as "self-serving attempts at deception obviously aimed at leading police investigators astray or even diverting suspicion onto others and away from him." *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014). As such, sufficient record evidence existed to support the assessment of 10 points for OV 19.

Because errors did not occur in the scoring of the challenged OVs, the minimum sentence guidelines range is unchanged and defendant is not entitled to resentencing. See *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Brock A. Swartzle