*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICARDO FABELA,

Defendant-Appellant.

UNPUBLISHED
March 24, 2025
12:31 PM

No. 367929
Kent Circuit Court
LC No. 22-004968-FC

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

A jury convicted defendant of one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1); and one count of first-degree felony murder, MCL 750.316(1)(b). We affirm.

## I. FACTUAL BACKGROUND

This case arises out of the 2005 shooting of the victim, Edgar Lopez. Lopez and two other men—Hector Rodriguez and Dipak Patel—were chatting in Lopez's living room when defendant and another man, Miguel Vidana, barged in the front door. Defendant was carrying a sawed-off shotgun. Lopez stood up from his chair upon seeing the gun. Within a minute of his entrance, defendant shot Lopez in the face. Defendant then ordered Patel into a bedroom and beat him with the shotgun. Patel died at the scene. Rodriguez fled the house and ran eight blocks to his family's home. His mother called 911 after Rodriguez told her about the shooting. Vidana and defendant immediately left the state, eventually stopping in Mexico. Defendant was later arrested in Mexico and extradited to Kent County in 2019, nearly 15 years after the shooting. He was subsequently convicted by a jury and sentenced as earlier stated. This appeal followed.

-1-

## II. ANALYSIS

## A. PROSECUTORIAL MISCONDUCT[1]

Defendant first argues that the prosecutor committed misconduct by eliciting the opinion testimony of Grand Rapids Police Department Detective Michael Nagel. Relatedly, he argues that defense counsel was ineffective for failing to object to the testimony. We disagree.

Because defendant did not object to the prosecutor's comments at trial, this claim is unpreserved. *People v Thurmond*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361302); slip op at 9. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*.

Defendant likewise failed to preserve his claim of ineffective assistance of counsel by moving for a new trial or a *Ginther*[2] hearing. *People v Lane*, 308 Mich App 38, 68, 862 N.W.2d 446 (2014). Accordingly, our review of this claim "is limited to mistakes apparent on the record." *People v Jackson*, 292 Mich App 583, 600; 808 NW2d 541 (2011).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007); see also *Darden v Wainwright*, 477 US 168, 181; 106 S Ct 2464; 91 L Ed 2d 144 (1986). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Dobek*, 274 Mich App at 66. "[T]he prosecutor may argue from the evidence, and reasonable inferences from it, to support a witness's credibility." *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021). However, the prosecutor "may not vouch for the credibility of his or her witnesses." *People v Bennett*, 290 Mich App 465, 477-478; 802 NW2d 627 (2010). This is so because there is a "danger . . . that the jury will be persuaded by the implication that the prosecutor has knowledge that the jury does not and decide the case on this basis rather than on the evidence presented." *Id*.

Additionally, a witness or expert may not "comment or provide an opinion on the credibility of another person while testifying at trial." *People v Musser*, 494 Mich 337, 349; 835

---

[1] We note that "the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals . . . [but] these claims of error might be better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

NW2d 319 (2013). "[C]redibility matters are to be determined by the jury." *Dobek*, 274 Mich App at 71. "[S]uch statements are considered superfluous and are inadmissible lay witness[] opinion on the believability of a [witness's] story because the jury is in just as good a position to evaluate the [witness's] testimony." *Musser*, 494 Mich at 349 (quotation marks and citation omitted; alterations in original). At most, MRE 701 permits lay witnesses to state opinions that are: "(a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue."[3] Relevant to this appeal, this rule allows police officers to give opinions and inferences based on their observations and perceptions as police officers, so long as those opinions are not based on specialized knowledge. *People v Oliver*, 170 Mich App 38, 49-50; 427 NW2d 898 (1988).

Here, Detective Nagel testified about his frustration regarding the difficulty of obtaining arrest warrants for defendant:

> We—we felt we had a good witness. There was no question in our mind on who committed the—the shooting, so we wanted a warrant, but it was a delayed a couple of days until, what I recall, some convincing to the prosecutor's office that, you know, we had the right person. The witness was, you know, very accurate with his statements and that we wanted a warrant for Ricardo. And I believe it was issued two or three days later.

Detective Nagel also testified about Rodriguez's cooperation as a witness throughout the investigation in the following exchange:

> *Q*. Would you describe [Rodriguez] as cooperative, reluctant witness? How would you describe his level of cooperation with the Grand Rapids Police Department?
>
> *A*. He was—he was very cooperative.
>
>       \*    \*    \*
>
> *Q*. Now, you were also able to review all of [Rodriguez]'s statements in this case. Is that correct?
>
> *A*. Yes.
>
>       \*    \*    \*
>
> *Q*. Anything [Rodriguez] ever say to you strikingly inconsistent [sic] or— or contradict himself?

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of trial.

*A.* Never.

*Q.* Do you have any information, any leads, any tips, anything, that Hector Rodriguez is the one that shot Edgar Lopez?

*A.* Absolutely not.

* * *

*Q.* Are you aware of any time that Miguel Vidana and [Rodriguez] spoke between the murder and . . . Vidana's return to Grand Rapids?

*A.* No.

*Q.* And when you interview Miguel Vidana, are you aware of any inconsistencies in what he said compared to all the other evidence you have?

*A.* No.

Nothing in the prosecutor's questions suggest that he was asking Detective Nagel to vouch for Rodriguez's credibility. Although "it is improper for a witness . . . to comment or provide an opinion on the credibility of another person while testifying at trial," *Musser*, 494 Mich at 349, Detective Nagel was not referring to Rodriguez's general credibility; rather, he only addressed the consistency of the statements that Rodriguez made to the police. Moreover, "a police officer may testify about his or her perceptions, during the course of an investigation, of whether a defendant was being truthful." *People v Lowrey*, 342 Mich App 99, 109; 993 NW2d 62 (2022). Detective Nagel gave his professional opinion, based on his personal observations, that Rodriguez's statements were consistent throughout the investigation. See *Oliver*, 170 Mich App at 49-50. As a result, the challenged testimony did not involve any improper opinion implicating defendant's guilt or Rodriguez's truthfulness. "Defendant has not demonstrated bad faith on the part of the prosecutor or that he was prejudiced by admission of the testimony." *People v Noble*, 238 Mich App 647, 661; 608 NW2d 123 (1999). Moreover, any prejudice was alleviated when the trial court instructed the jury that "[t]he lawyers' questions to the witnesses . . . are . . . not evidence." See *Lane*, 308 Mich App at 62.

We likewise conclude that defense counsel's failure to object to the prosecutor's alleged misconduct did not constitute ineffective assistance of counsel. To establish that defense counsel's performance was constitutionally deficient, a defendant must demonstrate that "(1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008); see also *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* As earlier noted, the prosecutor's examination of Detective Nagel did not amount to prosecutorial misconduct. Defense counsel will not be considered ineffective for failing to advance a meritless argument. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

-4-

B. NOTICE OF CHARGES

Defendant next argues that the failure to charge him on a theory of larceny violated his right to a fair trial. He also argues that defense counsel was ineffective for failing to object to the lack of notice. We disagree.

"Generally, an issue is not properly preserved unless a party raises the issue before the trial court and the trial court addresses and decides the issue." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Defendant did not raise the issue of a lack of notice as to the charge of felony murder on a theory of larceny at trial; therefore, the issue is not preserved. Unpreserved constitutional issues are reviewed for plain error affecting a defendant's substantial rights. *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018).

"No person may be deprived of life, liberty, or property without due process of law." *People v McGee*, 258 Mich App 683, 699; 672 NW2d 191 (2003), citing US Const, Am V, and Const 1963, art 1, § 17. "In a criminal case, due process generally requires reasonable notice of the charge and an opportunity to be heard." *McGee*, 258 Mich App at 699. The constitutional notice requirement "is a practical requirement that gives effect to a defendant's right to know and respond to the charges against him." *Id.*

Here, the felony information indicated that the prosecutor charged defendant with "HOMICIDE-OPEN MURDER-STATUTORY SHORT FORM" for murdering Lopez. The information only stated that he was charged under MCL 750.316, which governs the statutory offense of first-degree murder. Later, at defendant's trial, the prosecution presented the argument that defendant committed first-degree felony murder, MCL 750.316(1)(b). The elements of felony murder are:

> (1) the killing of a person, (2) with the intent to kill, do great bodily harm, or create a high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of an enumerated felony. [*Lane*, 308 Mich App at 57-58.]

The list of enumerated felonies that justify conviction of first-degree felony murder include the following:

> Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, kidnapping, vulnerable adult abuse in the first or second degree under section 145n, torture under section 85, aggravated stalking under section 411i, or unlawful imprisonment under section 349b. [MCL 750.316(1)(b).]

The prosecutor specifically put forth alternative theories that Lopez's murder occurred in connection with either larceny or first-degree home invasion, which are predicate felonies under MCL 750.316(1)(b).

-5-

Defendant contends that he was deprived of notice of the nature of the charge against him because he did not know that the prosecution would pursue a conviction of first-degree felony murder when it charged him with open murder. This argument lacks merit. It is well-established in Michigan that a charge of open murder includes a charge of first-degree murder. See *People v Treichel*, 229 Mich 303, 307-308; 200 NW 950 (1924); *People v McKinney*, 65 Mich App 131, 135-136; 237 NW2d 215 (1975). Our courts have long held that a felony information need not specify the degree of murder and that the information is sufficient if it asserts that the defendant murdered the decedent. See *People v Spells*, 42 Mich App 243, 245; 201 NW2d 361 (1972); see also *People v Brown*, 23 Mich App 528, 534; 179 NW2d 58 (1970). Thus, a prosecutor may file a felony information charging a defendant with open murder, with the degree to be determined as the case develops. *People v Steubenvoll*, 62 Mich 329, 331; 28 NW 883 (1886); *People v Johnson*, 427 Mich 98, 112 n 12; 398 NW2d 219 (1986). Only after a defendant is convicted must the jury " 'ascertain in their verdict, whether it be murder of the first or second degree.' " *People v Watkins*, 247 Mich App 14, 20; 634 NW2d 370 (2001), quoting MCL 750.318. Additionally, there is no "fundamental constitutional interest in being charged with degree-specific murder." *Johnson*, 427 Mich App at 112.

Defendant's warrant and information clearly stated that the substance of the charge against him was for the murder of Lopez in violation of MCL 750.316. As noted, felony-murder is classified as a first-degree murder that occurred during the commission of an enumerated felony, and a charge of open murder encompasses first-degree murder. See MCL 750.316; see also MCL 750.318. Accordingly, defendant was not deprived of his right to be informed of the offense charged. He has therefore failed to establish plain error affecting his substantial rights.

As earlier noted, defendant also argues that his defense counsel was ineffective for failing to object to the lack of notice regarding the specific charge of first-degree felony murder. Again, our review of this matter is "limited to mistakes apparent on the record." *Jackson*, 292 Mich App at 600. Under the preceding analysis, defendant was provided proper notice; thus, defendant cannot establish the factual predicate for his ineffective-assistance claim, as counsel will not be considered ineffective for failing to advance a meritless argument. See *Ericksen*, 288 Mich App at 201.

## C. JURY INSTRUCTIONS

Defendant also argues that the trial court violated his right to a unanimous jury verdict by failing to give a special unanimity instruction, when multiple theories existed to form the basis of his felony-murder conviction. He further contends that defense counsel was ineffective for failing to object to the jury instructions. We disagree.

To preserve instructional issues for appeal, defendants "must object to the instruction before the jury deliberates." *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). If a party expresses satisfaction with the jury instructions as given, then the issue is waived, and there is no error to review. *People v Kowalski*, 489 Mich 488, 503-504; 803 NW2d 200 (2011). Similarly, "[w]hen the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions[,]" which results in waiver of appellate review. *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

Before closing argument, defense counsel objected to the omission of two instructions: one pertaining to the prosecutor's failure to produce a witness and the other to defendant's lack of presence due to an alibi. The trial court overruled both objections. Defense counsel never objected to the lack of an instruction on unanimity. Instead, defense counsel indicated that he had no further objections in the following exchange:

> [*The Court*]: All right. So—so we got the jury verdict form. We got the jury instructions. I think we're all set. I think we can line up the jury and bring them in. I'm going to quick run out and run back. Is there anything else before we bring the jury out?
>
> [*The Prosecutor*]: No, Your Honor.
>
> [*The Court*]: How about you?
>
> [*Defense Counsel*]: No, Your Honor.

An affirmative statement by counsel that there are no further objections to the proposed jury instructions constitutes express approval of the jury instructions. *Kowalski*, 489 Mich at 504-505. Because defense counsel approved of the remaining instructions by not indicating any further objections when given the opportunity to do so, appellate review of defendant's claim is precluded. See *id*. See also *People v McDonald*, 293 Mich App 292, 295; 811 NW2d 507 (2011) (noting that while failure to object constitutes forfeiture, "affirmative approval constitute[s] a waiver").

However, even if the matter is waived, we may still address defendant's argument regarding the jury instructions through the lens of his related ineffective-assistance argument. On that point, defendant argues that defense counsel's failure to object to the instructions constituted ineffective assistance of counsel. As earlier noted, since defendant did not preserve this issue by moving for a new trial or a *Ginther* hearing, our review is "limited to mistakes apparent on the record." *Jackson*, 292 Mich App at 600.

The Sixth Amendment right to a jury trial and the Michigan Constitution entitle the accused to a unanimous jury verdict. US Const, Ams VI, XIV; Const 1963, art 1, §§ 14, 20; *Ramos v Louisiana*, 590 US 83; 140 S Ct 1390; 206 L Ed 2d 583 (2020). To protect that right, the trial court must instruct the jury properly on the unanimity requirement. MCR 6.410(B); *People v Cooks*, 446 Mich 503; 521 NW2d 275 (1994). Often, the trial court fulfills that duty by providing the jury with a general instruction on unanimity. *Id*. at 512. A specific unanimity instruction may be required in cases in which "more than one act is presented as evidence of the *actus reus* of a single criminal offense" and each act is established through materially distinguishable evidence that would lead to juror confusion. *Id*. at 512-513. "[W]hen a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is *not* required with regard to the alternate theory." *People v Chelmicki*, 305 Mich App 58, 68; 850 NW2d 612 (2014) (quotation marks and citation omitted) (emphasis added).

The elements listed in the felony-murder jury instruction given in this case constituted alternative means of proving a single element of the crime of felony-murder. Because larceny and home invasion were simply alternative theories to prove a single element of felony murder, the

court did not plainly err by providing the jury with a general unanimity instruction. See *id*. Additionally, there is no indication that the jurors in this case did not follow the instructions. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998) ("It is well established that jurors are presumed to follow their instructions"). There is likewise no indication in the record that the jury was confused, disagreed about the factual basis of defendant's guilt, or that its verdict was anything but unanimous. Accordingly, because defendant was not entitled to a special unanimity instruction, defense counsel's performance was not constitutionally deficient. See *Ericksen*, 288 Mich App at 201.

Affirmed.

/s/ Michael J. Kelly
/s/ Stephen L. Borrello
/s/ Michelle M. Rick